**In re Lucius Fredric CASSIDY, Jr., a.k.a. Lucius F. Cassidy, Jr., D.D.S., a.k.a. "Pete" Cassidy, Debtor.**

**No. 88 B 09741 C.**

United States Bankruptcy Court, D. Colorado.

Feb. 12, 1991.

Stephen W. Seifert, and Caroline C. Fuller, Fairfield and Woods, P.C., Denver, Colo., for petitioner.

Bruce A. Anderson, Special Asst. U.S. Atty., Denver, Colo., for debtor.

## ORDER

PATRICIA A. CLARK, Bankruptcy Judge.

This matter is before the Court upon the disbursing agent's objection to tax claims of the Internal Revenue Service (IRS) and the IRS's response thereto. The parties represented to the Court that no facts are in dispute and thus, the matter was submitted on the briefs of the parties. The debtor filed a reply brief in support of the IRS's position.

All facts have been stipulated to and are as follows: The debtor, Dr. Lucius F. Cassidy, Jr., (debtor), filed his voluntary Chapter 11 petition on July 25, 1988. The debtor is an orthodontist who operated his practice as a professional corporation since 1969. The professional corporation established two pension and profit sharing plans qualified pursuant to 26 U.S.C. § 401. In order to secure personal loans for various partnerships in which the debtor was involved, a substantial portion of the plan assets were pledged to various banks. When the debtor encountered financial difficulties and defaulted on the loans, the banks foreclosed on the plan assets. The debtor's joint 1987 federal income tax return included $468,807 of pledged plan assets as income from plan distributions. As part of the debtor's 1987 tax liability, approximately $46,881 was assessed as a 10% "additional tax" pursuant to 26 U.S.C. § 72(t) for early withdrawals from the plans. Of that amount, $13,196 remains due and owing. In 1988, the debtor's taxable income included $358,664 of pledged plan assets distributed from the qualified plans. The debtor still owes $35,867 from the 1988 26 U.S.C. § 72(t) 10% additional tax for early distributions. The total amount owed to the IRS pursuant to 26 U.S.C. § 72(t) is $49,063.

This case appears to be one of first impression, and involves the interpretation of 26 U.S.C. § 72(t).[1] The Court must determine whether the 10% additional tax imposed pursuant to the Internal Revenue Code (IRC) section is actually a tax, or is in reality a penalty. If it is a tax, the obligation will be entitled to priority status in this case pursuant to 11 U.S.C. § 507(a)(7)(A)(i) and must be paid in full with interest through the debtor's plan. If the 10% additional tax on early distributions is determined to be a penalty, it may still be entitled to priority status if the penalty is a pecuniary one. If the Court finds that Congress intended 26 U.S.C. § 72(t) to be in the nature of a punitive penalty, then the tax liability imposed pursuant to that section will not be afforded priority treatment in this case.

The disbursing agent asserts that in *City of New York v. Feiring*, 313 U.S. 283, 61 S.Ct. 1028, 85 L.Ed. 1333 (1941) and subsequent cases, a four-prong test has been developed for determining whether a particular exaction qualifies for treatment as a tax for bankruptcy purposes. The disbursing agent argues that the assessment in the case at bar does not qualify as a tax under that test, and is in reality a penalty. Further, the disbursing agent contends that the 26 U.S.C. § 72(t) penalty is a punitive one, and not one imposed as a result of actual pecuniary loss to the government. Therefore, he alleges that the penalties are not entitled to priority status.

The IRS takes the position that the assessment imposed pursuant to Section 72(t) does in fact qualify as a tax. Alternatively, the IRS asserts that if the Court finds the exaction to be a penalty, the Court must also find it to be a pecuniary one which was intended to help the government recoup revenues while it was precluded from collection by statute.

The debtor contends that the *Feiring* test has been met and thus the tax qualifies for priority treatment. In accord with the IRS position, the debtor also alterna-

---

1. 26 U.S.C. § 72(t) provides in pertinent part:
    (t) 10% additional tax on early distributions from qualified retirement plans.—
       (1) IMPOSITION OF ADDITIONAL TAX.— If any taxpayer receives any amount from a qualified retirement plan (as defined in Sec-

tion 4974(c)), the taxpayer's tax under this chapter for the taxable year in which such amount is received shall be increased by an amount equal to 10% of the portion of such amount which is includible in gross income.

. . . . .

tively argues that if the assessment is a penalty, the Court must find it to be a pecuniary one which will be entitled to priority status.

■ "Whether the present obligation is a 'tax' entitled to priority within the meaning of the statute is a federal question." *City of New York v. Feiring, supra,* at 285, 61 S.Ct. at 1029. The IRS asserts that Section 72(t) is in the portion of the Internal Revenue Code which deals with income taxes, not penalties. They contend that had Congress intended the liability contained in Section 72(t) to be a penalty, it would have been codified in that portion of the IRC which deals with civil penalties.[2] However, courts have recognized the principle that merely denominating an obligation as a tax "does not mean it is such for all purposes." *In re Airlift Intern, Incorporated,* 97 B.R. 664, 669 (Bankr.S.D.Fla.1989). *See also In re Kline,* 403 F.Supp. 974 (D.Md.1975), *aff'd,* 547 F.2d 823 (4th Cir.1977); *In re Wheeling–Pittsburgh Steel Corporation,* 103 B.R. 672 (W.D.Pa.1989).

In the *Feiring* case *supra,* the Supreme Court defined taxes for bankruptcy purposes as "pecuniary burden[s] laid upon individuals on their property, regardless of their consent, for the purpose of defraying expenses of government or undertakings authorized by it." 313 U.S. at 285, 61 S.Ct. at 1029. From that definition, courts have developed a four-part test which must be met in order for an obligation labeled as a tax to actually be considered a tax in the bankruptcy context. The four factors are:

 1. an involuntary pecuniary burden, regardless of name, laid upon individuals or property;

 2. imposed by, or under authority of the legislature;

 3. for public purposes, including the purposes of defraying expenses of government or undertakings authorized by it; and

 4. under the police or taxing power of the state or government.

*See, In re Lorber Industries of California, Inc.,* 675 F.2d 1062 (9th Cir.1982), *Matter of Mansfield Tire and Rubber Company, supra, In re Airlift Intern Inc., supra, In re Skjonsby Truck Line, Inc.,* 39 B.R. 971 (Bankr.D.N.D.1984).

There is no question that the first prong of the test has been satisfied. The monetary assessment was laid upon the debtor without his consent. The exaction has also been imposed pursuant to the Internal Revenue Code, a set of statutes enacted by Congress. Thus, the second criteria of the test has been met. It is undeniable that the obligation has been imposed under the taxing power of the federal government. As a result, the fourth prong of the test has been complied with. The remaining issue is whether the 26 U.S.C. § 72(t) exaction was imposed by the legislature for a public purpose.

Both the IRS and the debtor state that Section 72(t) was partially enacted to help defray the expenses of government by recapturing revenues previously lost from the tax-free accumulation of funds placed into qualified plans. The debtor advances an additional argument that by discouraging early withdrawals from qualified plans, the government is encouraging taxpayers to save for their retirement. This allegedly serves the public purpose of taking pressure off the overburdened Social Security System.

The disbursing agent contends that under the third prong, any obligation which is punitive in nature cannot be imposed for public purpose. While recognizing that no cases interpret Section 72(t) for bankruptcy purposes, the disbursing agent points the Court to authority which has interpreted other IRC sections in relation to the tax or penalty analysis. For example, *In re Kline, supra,* and *In re Mansfield Tire & Rubber, supra,* both held that where the

---

**2.** This argument was recently advanced by the government on appeal in another case, *Matter of Mansfield Tire & Rubber Co.,* 80 B.R. 395 (Bankr.N.D.Ohio 1987), *aff'd* 120 B.R. 862 (N.D. Ohio E.D.1990). There, the District Court found the government's argument to have little merit

and disposed of it quickly. Although the Internal Revenue Code section in that case differs from the one *sub judice,* the result is the same. The IRS argument ignores the express intent of the congressional drafters.

statutes in question were enacted to penalize wrongful conduct, the tax assessed would not be entitled to priority status under the Bankruptcy Code.[3]

The Court must inquire into the purpose of the statute in question to determine whether its intent is punitive, or merely a revenue raising measure. The legislative history of 26 U.S.C. § 72(t) provides the Court with important insight.[4] In S.Rep. No. 313, 99th Cong., 2nd Sess. (1986), the Senate Finance Committee advanced certain reasons for changing the law and imposing the 10% additional tax. The report states, in pertinent part,

> Present law imposes *withdrawal sanctions* with respect to certain tax-favored retirement arrangements and requires withdrawal restrictions to be provided under others. The absence of withdrawal restrictions in the case of some tax-favored arrangements allows participants in those arrangements to treat them as general savings accounts with favorable tax features rather than as retirement savings arrangements. Moreover, taxpayers who do not have access to such arrangements, in effect, subsidize the general purpose savings of those whose employers maintain plans with liberal withdrawal provisions.
>
> Although the committee recognizes the importance of encouraging taxpayers to save for retirement, the committee also believes that tax incentives for retirement savings are inappropriate unless the savings generally are *not diverted* to non-retirement uses. One way to *prevent such diversion* is to impose an additional income tax on early withdrawals from tax-favored retirement savings arrangements in order to *discourage withdrawals* and to recapture a measure of the tax benefits that have been provided....
>
> Moreover, the committee is concerned that the present-law level of the additional income tax appears in many instances to be an *insufficient deterrent* to the

use of retirements funds for non-retirement purposes, because for taxpayers whose income is taxed at a higher marginal rate, *sanctions* may be neutralized by the tax-free compounding of interest after a relatively short period of time." S.Rep. No. 99–313, 99th Cong., 2nd Sess. 612–613 (1986) (emphasis added).

The report of the House of Representatives Ways and Means Committee in essence tracks the language of the Senate Report. *See* H.R.Rep. No. 3838, 99th Cong. (1986).

The conference report which evolved from the House and Senate Reports does not contain a "Reasons for Change" section. *See* H.R.Rep. No. 99–841, 99th Cong.2nd Sess. (1986), *reprinted in* 1986 U.S.Code Cong. & Admin.News 4075, 5440, 4440. However, it is clear from the "Reasons For Change" section of the House and Senate Reports which accompanies the enactment of the legislation that by using phrases such as "withdrawal sanctions," "insufficient deterrent," and "prevent such diversions", Congress's main intention was to penalize those taxpayers who made early withdrawals from qualified pension plans. In fact, those same phrases led the *Mansfield Tire* court, *supra*, to the conclusion that a 26 U.S.C. § 4971 assessment was imposed for penal purposes.

Buttressing this conclusion is another section of 26 U.S.C. § 72, which provides for hardship withdrawals from qualified plans under certain circumstances. Those provisions allow individuals to withdraw funds prematurely from qualified pension plans without having to pay the 10% additional tax. If the main purpose of Section 72(t) was to recapture and defray government costs, the 10% additional tax would be uniformly applied. Clearly, even those who qualify under the hardship provisions receive preferential tax treatment at the time they deposited funds into a qualified plan. The grouping of individuals into those who qualify for hardship withdrawals and those who do not indicates congression-

---

**3.** The *Kline* case was decided prior to re-enactment of the Bankruptcy Code.

**4.** The statute was amended as part of the Tax Reform Act of 1986, Pub.L. No. 99–514 (codified as 26 U.S.C. § 72(t)).

al desire to penalize nonhardship withdrawals which divert retirement savings for non-retirement uses. This is precisely what occurred in the case at bar. The debtor pledged his qualified plan assets as collateral for speculative partnership loans which was a non-retirement use of those funds.

It is true that in the broadest sense, the assessments imposed under Section 72(t) help defray government costs but "such a broad construction would effectively eliminate any meaning to the third part of the test, as almost any exaction imposed by the government would qualify." *In re Mansfield Tire & Rubber Co., supra* at 400.

The debtor admits that the Section 72(t) tax is imposed to discourage early withdrawals from qualified pension plans. The debtor's argument that the qualified pension plans help alleviate pressure on the Social Security System is specious, because even those who contribute to such plans are eligible for the receipt of Social Security retirement benefits. Thus, whether an individual makes an early withdrawal from a qualified plan has no bearing on their entitlement to Social Security benefits.

The debtor further argues that under *In re Toner*, 105 B.R. 978 (Bankr.D.Colo.1989) and *In re Alagna*, 107 B.R. 301 (Bankr.D. Colo.1989), the avails of pension and profit sharing plans are property of the estate. Thus, the debtor states that unsecured creditors in this case have benefitted by the early withdrawals from the qualified pension plans and it would be inequitable to make him bear the cost of an act which has benefitted creditors. This argument is disingenuous. The debtor did not withdraw the funds from the qualified plan in order to place his unsecured creditors in a more favorable position. The monies were used to collateralize loans for the debtor's speculative partnership investments, in the hope that they would produce considerable personal dividends. The fact that the debtor's actions indirectly and unintentionally bene-

fitted his unsecured creditors does not have any bearing on the merits of 26 U.S.C. § 72(t) being a tax or a penalty. For the foregoing reasons the Court concludes that the Section 72(t) exaction is a penalty and does not constitute a tax for purposes of 11 U.S.C. § 507(a)(7).

■ The next issue is whether the IRS claim can qualify under Section 507(a)(7)(G) as a pecuniary loss penalty. If so, the liability will be entitled to priority treatment notwithstanding the above determination by the Court.

The IRS argues that when a contribution is made to a qualified pension plan, the government forgoes collection of taxes on those monies until distribution from the plan is made. The government loses the use of those funds and, therefore, cannot earn interest on the money. Thus, the 10% additional tax is an attempt by the government to recoup lost revenues, and it is therefore a pecuniary penalty.

The disbursing agent contends that the 10% additional tax is a flat rate penalty, which bears no relation to the direct financial loss by the government. For example, the 10% additional tax is imposed on an individual who places funds into a qualified plan and withdraws the money one month later. The same 10% tax is imposed upon an individual who does not make an early withdrawal from a qualified plan for 15 years. Obviously the interest lost by the government is much greater in the latter case, because it has been without use of those funds for a much longer time span. From this result, the disbursing agent argues that Congress's intent in enacting Section 72(t) must have been to sanction early withdrawals, and not to defray governmental costs.

The Court finds the disbursing agent's argument persuasive, in light of the prior discussion of the punitive nature of the legislative history of Section 72(t).[5] The Court believes that the intent of the statute is to prevent individuals from diverting re-

---

**5.** In *In re Kline, supra,* at 978, the court was persuaded by this reasoning. They stated,

    If Congress had also intended that the new provisions compensate the government for

revenue lost because of the abuses, the graduated levels would have approximated or at least have borne some relation to, the amount of revenue lost by such conduct.

tirement savings to non-retirement uses. The Bankruptcy Code contains a strong policy "of protecting innocent creditors from the impact of punitive debts." *In re Mansfield Tire & Rubber Co., supra* at 397. Therefore, nonpecuniary loss penalties are subordinated to the claims of other unsecured creditors.

The debtor states that even if the Court finds the Section 72(t) exaction to be a punitive tax measure, the issue of subordination of the tax penalty is not properly before this Court and must be initiated by an adversary proceeding. However, in this case we are operating under the terms of a confirmed plan of reorganization which contains a separate class for penalty claims. Article II, Paragraph 2.6 of the plan states that Class 6 of the plan shall consist of all allowed claims for fines, penalties or forfeitures that are not in compensation for actual pecuniary loss. In Paragraph 5.5 of the plan, it is stated that holders of Class 6 claims will be paid their pro rata share of their allowed claims ... following the full satisfaction of all allowed claims in Classes 1 through 5. Thus, the Class 6 claims will be subordinated to general unsecured claims.

ORDERED that the debtor's 26 U.S.C. § 72(t) liabilities will not be entitled to priority status in this case, as the exactions are non-pecuniary tax penalties;

FURTHER ORDERED that the 26 U.S.C. § 72(t) liabilities shall be placed in Class 6 of the debtor's plan pursuant to the terms of the confirmed plan to be paid as funds are available.