**In re C–T OF VIRGINIA, INCORPORATED, fka Craddock–Terry Shoe Corporation f/d/b/a Hill Brothers, Bonafide Shoe Factory Outlet, Massey Shoes, Country Cobbler, Herold's Shoes, The Shoe Room, Comfort Unlimited, and The Perfect Pair, Debtor.**

**Bankruptcy No. 87–01155.**

United States Bankruptcy Court,
W.D. Virginia,
Lynchburg Division.

May 3, 1991.

George H. Fralin, Jr., Fralin, Freeman & Kinnier, Lynchburg, Va., for Unsecured Creditors' Committee.

Joseph Braunstein, Riemer & Braunstein, Boston, Mass., for Creditors' Committee.

Thomas Kennedy, Office of U.S. Trustee, Roanoke, Va.

Gerald A. Role, Trial Attorney, Tax Div., U.S. Dept. of Justice, Washington, D.C.

E. Montgomery Tucker, U.S. Atty., Roanoke, Va.

## MEMORANDUM OPINION

WILLIAM E. ANDERSON, Chief Judge.

The issue before the court is whether a tax imposed on C–T of Virginia, Inc., the debtor, pursuant to 26 U.S.C. § 4980 is entitled to priority under section 507 of the Bankruptcy Code. If the obligation is properly categorized as an excise tax or as a pecuniary penalty, it will be entitled to priority status pursuant to 11 U.S.C. § 507(a)(7)(E) or (G) and must be paid in full with interest before the debtor's unsecured creditors. If it is determined to be a punitive penalty, however, the liability imposed pursuant to section 4980 will not be afforded priority treatment.

## FACTS

The parties stipulated the following facts.

The Internal Revenue Service filed as part of Claim No. 692 an unsecured priority claim under 11 U.S.C. § 507(a)(7) for $285,443.35 plus $1,788.37 interest. The claim is based on 26 U.S.C. § 4980 [1], which imposes a tax on an employer equal to 10% of the assets of a qualified pension plan when the assets of such a plan revert to an employer. Within three years prior to the commencement of this case the debtor terminated a qualified pension plan as defined in 26 U.S.C. § 4980(c)(1). When the plan was terminated the debtor received an "employer reversion" as defined in 26 U.S.C. § 4980(c)(2). The amount of tax claimed by

---

**1.** 26 U.S.C. § 4980 provides in relevant part as follows:

(a) **Imposition of Tax.**—There is hereby imposed a tax of 10 percent of the amount of any employer reversion from a qualified plan.

(b) **Liability for Tax.**—The tax imposed by subsection (a) shall be paid by the employer maintaining the plan.

(c) **Definitions and Special Rules.**—For purposes of this section—

(1) **Qualified Plan.**—The term "qualified plan" means any plan meeting the require-

ments of section 401(a) or 403(a), other than—...

Such term shall include any plan which, at any time, has been determined by the Secretary to be a qualified plan.

(2) **Employer reversion.**—

(A) **In general.**—The term "employer reversion" means the amount of cash and the fair market value of other property received (directly or indirectly) by an employer from the qualified plan.

. . . . .

the Internal Revenue Service was computed correctly.

## ARGUMENTS

The Unsecured Creditors' Committee argues on behalf of the debtor that the tax on reversions of qualified pension plan assets imposed by section 4980 is a penalty, not a tax entitled to priority under section 507(a)(7)(E) of the Bankruptcy Code, and that it is not a penalty afforded priority under section 507(a)(7)(G) [2].

The United States of America argues that the tax imposed by section 4980 is an excise tax entitled to priority under section 507(a)(7)(E) because: (1) it was added to the Internal Revenue Code by section 1132 of the Tax Reform Act of 1986, Pub.L. No. 99–514, which is entitled "excise tax on reversion of qualified plan assets to employer;" (2) the legislative history of section 4980 indicates that the tax imposed by section 4980 is a tax and not a penalty; and (3) that section 4980 satisfies the judicial test for treatment as a tax for bankruptcy purposes.

## DISCUSSION

■ The name given to an obligation imposed under the Internal Revenue Code does not determine whether it is should be categorized as a tax or a penalty for purposes of section 507 of the Bankruptcy Code. See *New Neighborhoods, Inc. v. West Virginia Workers' Compensation Fund*, 886 F.2d 714, 718 (4th Cir.1989); *In re Kline*, 403 F.Supp. 974, 978 (D.Md.1975), *aff'd* 547 F.2d 823 (4th Cir.1977); *In re Airlift Int'l, Inc.*, 97 B.R. 664, 669 (Bkrtcy. S.D.Fla.1989), *aff'd* 120 B.R. 597 (S.D.Fla. 1990).

■ Instead, a four factor test is used to determine whether an obligation is considered a tax entitled to priority. An obligation is a tax if it is: (1) an involuntary pecuniary burden, regardless of name, laid upon individuals or property; (2) imposed by or under the authority of the legislature; (3) for public purposes, including the purposes of defraying expenses of government or undertakings authorized by it; and (4) under the police or taxing power of the government. *City of New York v. Feiring*, 313 U.S. 283, 285, 61 S.Ct. 1028, 1029, 85 L.Ed. 1333 (1941); *In re Mansfield Tire & Rubber Co.*, 80 B.R. 395, 397 (Bkrtcy.N. D.Ohio 1987), *aff'd* 120 B.R. 862 (N.D.Ohio 1990). Although the obligation imposed by section 4980 arguably satisfies the first, second, and fourth factors, no court has yet determined that the "employer reversion tax" was imposed by Congress for the purpose of raising revenue or any other public purpose.

■ The United States argues that the "employer reversion tax" is for a public purpose because section 4980 recaptures the tax on income which would have been imposed had the employer not contributed it to a qualified defined benefit plan. The United States goes on to argue that the tax is an enforced contribution to provide for the support of the government like the corporate income tax. When a plan is terminated and a reversion occurs, instead of going back and revising corporate income and recomputing the corporate income for each year that contributions to the defined benefit plan were made, the reversion amount is taxed at a flat rate when it is received. Finally, the United States argues that a uniform tax rate was imposed rather than a graduated rate like that used for computing corporate income tax, in order to avoid overly complex computations to

---

**2.** 11 U.S.C. § 507(a)(7)(E) and (G) provide:
(a) The following expenses and claims have priority in the following order:
(7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—
(E) an excise tax on—
(i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or
(ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition; ...; or
(G) a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss.

determine the amount of tax due when reversions occur.

The debtor points out that the tax imposed by section 4980 on pension plan assets when they revert to an employer is in addition to, not in lieu of, the corporate income tax.[3] Nor is the amount due under section 4980 related to any tax benefit enjoyed by the employer.[4] Instead, the purpose of section 4980 is to recapture unintended tax advantages and to reverse inappropriate tax-favored treatment.

The debtor further contends that section 4980 is one of a series of statutes aimed at curbing employer abuses of employee benefit plans. See 26 U.S.C. §§ 4971–4980B. See also 26 U.S.C. §§ 72(q), (t), and (v) which impose a 10% penalty or additional tax on premature distributions from annuity contracts, early distributions from qualified retirement plans, and taxable distributions from modified endowment contracts. The taxes imposed by section 4971 and 72(t) have been determined to be penalties rather than taxes. See *In re Airlift Int'l, Inc.,* 97 B.R. 664 (Bkrtcy.S.D.Fla.1989), *aff'd* 120 B.R. 597 (S.D.Fla.1990) and *In re Mansfield Tire & Rubber Co.,* 80 B.R. 395, *aff'd* 120 B.R. 862 (N.D.Ohio 1990) (section 4971 tax for failure to meet minimum plan funding standards construed as a penalty, not a tax for bankruptcy purposes); *In re Cassidy, Jr.,* 126 B.R. 94, 91–1 U.S.T.C. p. 50, 120 (Bkrtcy.D.Colo.1991) (11 U.S.C. § 72(t), which imposes a 10% tax against early withdrawals from qualified retirement plans as defined in Section 4974(c), treated as a penalty not a tax).

Nothing in the legislative history of 26 U.S.C. § 4980 specifically addresses the penalty versus excise tax question that is before the court. In general, however, that history and other legal commentary indicates that the purpose of section 4980 was and is to discourage employers from terminating overfunded retirement plans and using the excess funds for purposes other than employee retirement, health or other benefits.[5]

The court therefore agrees with the debtor that the obligation imposed by section 4980 is not a typical excise tax like those imposed on sales, gasoline, or estates and gifts which were clearly given priority by 11 U.S.C. § 507(a)(7)(E) [6]. The question remains, however, whether it should be categorized as a pecuniary loss penalty entitled to priority status pursuant to 11 U.S.C. § 507(a)(7)(G).

Section 507(a)(7)(G) gives priority status to unsecured claims of governmental units to the extent that such claims are for a penalty related to a claim of a kind otherwise specified in section 507(a)(7) and are in compensation for actual pecuniary loss. The obligation imposed by 26 U.S.C. § 4980 does not seem to meet either requirement.

As set out above, it does not qualify as a tax claim under 11 U.S.C. § 507(a)(7)(E) or any other section, nor is it related to any such claim.

Nor does it seem intended to compensate the government for actual pecuniary loss. The obligation that arises under section 4980 is imposed whether or not there has

3. 26 U.S.C. §§ 61, 111; Regulation § 1.111–1; and Rev.Rul. 73–528, 1973–2 C.B. 13.

4. For example, the debtor points out that there is no relationship between the Section 4980 tax rate and the corporate income tax rates imposed by 26 U.S.C. § 11(b). Section 4980 went into effect January 1, 1986 at a 10% flat rate. Pub.L. 99–514, Section 1132. At that time the top corporate income tax rate was 46%, Pub.L. 95–600, Section 301(a). The top corporate income tax rate was reduced to 34% effective July 1, 1987, Pub.L. 99–514, Section 601. Effective October 20, 1988, the rate of tax imposed by Section 4980 was increased to 15%, Pub.L. 100–647, and further increased to either 20% or 50% effective October 1, 1990, Pub.L. 101–508.

5. See, e.g., "General Explanation of the Tax Reform Act of 1986 (HR 3838)," prepared by the Staff of the Joint Committee on Taxation and released May 7, 1987, pp. 750–54; House Ways and Means Committee Report on HR 3838, "Tax Reform Act of 1985," Part II, released Dec. 9, 1985, pp. 756–57; and Treasury Department Report to President Reagan on "Tax Reform for Fairness, Simplicity, and Economic Growth—Vol. 2—General Explanation of the Treasury Department Proposals," Chapter 17.05, Nov. 27, 1984.

6. See the legislative history of section 507(a)(7)(E) at S.Rep.No. 989, 95th Cong., 2d Sess. 71 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

been any loss to the government. As the debtor notes, section 4980 imposes an obligation upon, and the same rate applies to, the reversion amount even though the employer may not have realized any tax benefit at the time it made contributions to the pension plan or even if the funds in the plan did not generate earnings that would have been taxable. The debtor's conclusion that Congress never intended that section 4980 recoup the actual amount of pecuniary loss to the government seems accurate.

## CONCLUSION

For the reasons set forth above, this court holds that that part of Claim No. 692 filed in this case by the Internal Revenue Service as an unsecured priority claim in the amount of $285,443.35 plus $1,788.37 pre-petition interest is not entitled to priority under 11 U.S.C. §§ 507(a)(7)(E) or (G). The court, without ruling thereon, also acknowledges that the Unsecured Creditors' Committee has the right to file a motion on behalf of the debtor seeking subordination of the amount claimed to other unsecured claims.