In re C–T of VIRGINIA, INCORPORATED, d/b/a The Perfect Pair, d/b/a Comfort Unlimited, d/b/a The Shoe Room, d/b/a Herold's Shoes, d/b/a Country Cobbler, d/b/a Massey Shoes, d/b/a Bonafide Shoe Factory Outlet, d/b/a Hill Brothers, formerly known as Craddock–Terry Shoe Corporation, Debtor.

UNITED STATES of America, Plaintiff–Appellee,

v.

UNSECURED CREDITORS' COMMITTEE OF C–TOF VIRGINIA, INCORPORATED, Defendant–Appellant.

No. 91–2397.

United States Court of Appeals, Fourth Circuit.

Argued May 5, 1992.

Decided Oct. 2, 1992.

As Amended Nov. 3, 1992.

**138**

George H. Fralin, Jr., Fralin, Freeman & Kinnier, P.C., Lynchburg, Va., argued (Gary M. Coates, on brief), for defendant-appellant.

Edward T. Perelmuter, Tax Div., U.S. Dept. of Justice, Washington, D.C., argued (James A. Bruton, Acting Asst. Atty. Gen., Gary R. Allen, Gary D. Gray, Tax Div., U.S. Dept. of Justice, Washington, D.C., E. Montgomery Tucker, U.S. Atty., Roanoke, Va., on brief), for plaintiff-appellee.

Before WIDENER and SPROUSE, Circuit Judges, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.

## OPINION

FRANK A. KAUFMAN, Senior District Judge:

During a Chapter 11 bankruptcy proceeding instituted by C–T of Virginia, Inc. (C–T),[1] the Internal Revenue Service (IRS) filed an unsecured priority claim under Section 507(a)(7) of the Bankruptcy Code for taxes imposed pursuant to Title 26, Section 4980 of the United States Code ("retirement plan tax"),[2] in the amount of $285,443.35 plus interest. Section 4980 imposed a tax upon an employer equal to 10 percent of the assets of a qualified pension plan in the event the assets of the plan revert to the employer upon the plan's termination.[3]

---

1. C–T was formerly known as Craddock–Terry Shoe Corporation. The name of the debtor was changed to C–T of Virginia, Inc. during the pendency of the bankruptcy case.

2. Section 4980 reads, in pertinent part:

(a) There is hereby imposed a tax of 10 percent of the amount of any employer reversion from a qualified plan.
(b) The tax imposed by subsection (a) shall be paid by the employer maintaining the plan.
(c) For purposes of this section—
 (1) The term "qualified plan" means any plan meeting the requirements of section 401(a) or 403(a), other than—

(A) a plan maintained by an employer if such employer has, at all times, been exempt from tax under subtitle A,
 (B) a governmental plan....
Such term shall include any plan which, at any time, has been determined by the Secretary to be a qualified plan.
 (2) The term "employer reversion" means the amount of cash and the fair market value of other property received (directly or indirectly) by an employer from the qualified plan.
26 U.S.C. § 4980.

3. Section 4980 was amended in 1988 to increase the 10 percent tax to 15 percent, *see* Pub.L. No. 100–647, 102 Stat. 3704, and amended again in

The parties agree that C–T, within three years prior to the commencement of the bankruptcy case, terminated a qualified pension plan as defined under section 4980, and that, when the plan was terminated, C–T received the reversion referred to in section 4980. However, the Unsecured Creditors Committee, in connection with its duties with respect to the bankruptcy estate of C–T, objected to the IRS claim for the retirement plan tax, contending that that section imposes a penalty which is not entitled to priority.[4] Agreeing with the Unsecured Creditors Committee, the Bankruptcy Court determined that the retirement plan tax pursuant to section 4980 was not entitled to priority because it is not an excise tax within the meaning of section 507(a)(7)(E)[5] nor a pecuniary penalty "in compensation for actual pecuniary loss" within the meaning of section 507(a)(7)(G),[6] but rather was a punitive type of penalty which is not entitled to priority treatment in bankruptcy. Upon appeal, the district court reversed the decision of the Bankruptcy Court, determining that the retirement plan tax was a monetary imposition in the nature of an excise tax and was not a punitive penalty.

In *New Neighborhoods, Inc. v. West Virginia Workers' Compensation Fund*, 886 F.2d 714 (4th Cir.1989), this Court addressed the characteristics governing whether an exaction is an excise tax entitled to priority under section 507(a)(7)(E), and wrote, "[F]or the purposes of priority under the Bankruptcy Act, taxes include 'those pecuniary burdens laid upon individuals or their property, regardless of their consent, for the purpose of defraying the expenses of government or of undertakings authorized by it.' ", *id.* at 718 (quoting *City of New York v. Feiring*, 313 U.S. 283, 285, 61 S.Ct. 1028, 1029, 85 L.Ed. 1333 (1941), and also stated: "An excise tax is an indirect tax, one not directly imposed upon persons or property, and is one that is 'imposed on the performance of an act, the engaging in any occupation, or the enjoyment or[sic] a privilege.' " *Id.* at 719 (quoting *In re Tri–Manufacturing & Sales Co.*, 82 B.R. 58, 60 (Bankr.S.D.Ohio 1988)). As to a punitive penalty, Judge Thomsen, in *In re Kline*, 403 F.Supp. 974 (D.Md.1975), *aff'd*, 547 F.2d 823 (4th Cir.1977), observed: "An enactment which has as its purpose the punishment of conduct perceived as wrongful should be deemed a 'penalty' ... regardless of the terminology employed by the legislature." *Id.* at 978.

 It is the purpose of the tax, not its name, which controls. While the name given by the legislative body may well be indicative of purpose, "[t]he name given to the exaction by the [federal Congress] is not conclusive." *Id.* (citing *New Jersey v. Anderson*, 203 U.S. 483, 27 S.Ct. 137, 51 L.Ed. 284 (1906). The tax at issue herein

---

1990 to increase the tax to 20 percent, *see* Pub.L. No. 101–508, 104 Stat. 1388 [1432].

**4.** Although, in the past, the Unsecured Creditors Committee objected to other aspects of the proofs of claim, all of those other objections were resolved by agreement during a hearing in the Bankruptcy Court. The parties have stipulated that the amount of retirement plan tax sought by the IRS is computed correctly. Thus, the only disputed issue is whether the IRS claim is entitled to priority in the C–T bankruptcy.

**5.** Section 507(a)(7)(E) reads, in pertinent part:
(a) The following expenses and claims have priority in the following order:
....
(7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—
....
(E) an excise tax on—

(i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or
(ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition....
11 U.S.C. § 507(a)(7)(E).

**6.** Section 507(a)(7)(G) reads, in pertinent part:
(a) The following expenses and claims have priority in the following order:
....
(7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—
....
(G) a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss.
11 U.S.C. § 507(a)(7)(G).

does not fall within the purview of section 507(a)(7)(G) as it is not exacted "in compensation for actual pecuniary loss." The sole issue is whether the tax falls under Section 507(a)(7)(E) as an excise tax or is a punitive penalty. The legislative history apparently gives little or no clue as to the answer to that question. Nor do the underlying background facts point conclusively in one direction or the other. When C–T, as the employer, contributed to the pension plan, it was able to deduct those contributions. When the plan was terminated, and the reversion occurred, the employer was required to pay tax on the reversion at a flat rate different from its then corporate rate, and not at the corporate rate at the time of the contribution and of the deduction. Rather clearly, the ten percent imposition hardly encourages the occurrence of such a reversion. But that does not necessarily mean that the imposition is a punitive type of penalty. The Bankruptcy Court concluded that the exaction involved herein is aimed at seeking to reduce abuses by employers and analogized the exaction to certain other impositions which have been held not to be excise taxes for bankruptcy purposes.[7] In contrast, Judge Kiser, in the court below, referred to a number of instances in which what have been deemed excise taxes are purposed, at least in part, toward discouraging conduct,[8] but concluded that did not prevent the imposition in question from being an excise tax entitled to priority treatment in bankruptcy. We agree with Judge Kiser. In our view the retirement plan tax in issue in this case, when viewed under the *New Neighborhoods* standards, has substantially more of the attributes of an excise tax than of a punitive penalty. Accordingly, we affirm the decision of the court below.

AFFIRMED.

---

**7.** Thus Bankruptcy Court wrote:

> The debtor further contends that section 4980 is one of a series of statutes aimed at curbing employer abuses of employee benefit plans. See 26 U.S.C. §§ 4971–4981. See also 26 U.S.C. §§ 72(q), (t), and (v) which impose a 10% penalty or additional tax on premature distributions from annuity contracts, early distributions from qualified retirement plans, and taxable distributions from modified endowment contracts. The taxes imposed by section 4971 and 72(t) have been determined to be penalties rather than taxes. See *In re Airlift Int'l, Inc.*, 97 B.R. 664 (Bkrtcy.S.D.Fla. 1989), *aff'd* 120 B.R. 597 (S.D.Fla.1990) and *In re Mansfield Tire & Rubber Co.*, 80 B.R. 395 (Bkrtcy.N.D.Ohio 1987), *aff'd* 120 B.R. 862 (N.D.Ohio 1990) (section 4971 tax for failure to meet minimum plan funding standards construed as a penalty, not a tax for bankruptcy purposes); *In re Cassidy, Jr.*, 126 B.R. 94 (Bkrtcy.D.Colo.1991) (11 U.S.C. § 72(t), which imposes a 10% tax against early withdrawals from qualified retirement plans as defined in Section 4974(c), treated as a penalty not a tax).

*In re C–T of Virginia, Inc.*, 128 B.R. 628, 631 (Bankr.W.D.Va.1991).

**8.** Judge Kiser thus noted:

> Many of the excise taxes of the Internal Revenue Code contained under Subtitles D (Miscellaneous Excise Taxes, which include § 4980) and E (Alcohol, Tobacco and Certain Other Excise Taxes) are levied against conduct and as such are consistent within the parameters of *New Neighborhoods*. Such excise taxes encompass, *inter alia*, § 4064 (gas guzzler tax), § 4681 (tax on ozone-depleting chemicals), § 4702 (tax on "registration required" obligations issued in bearer form), § 4941 *et seq.* (tax on undistributed income, speculative investments, etc. of private foundations), § 4999 (tax on "golden parachute" payments), § 5881 (tax on "greenmail"). I find little to distinguish these sections of the code assessing excise taxes upon so a broad [sic] range of conduct from that of 26 I.R.C. § 4980 in which Congress has denominated an excise tax to be levied against an employer who receives a reversion of the assets of a qualified plan from whose tax-exempt status the employer has previously benefitted. I find that 26 I.R.C. § 4980 is a monetary exactment which more closely comports to the definition of an excise tax as articulated in *New Neighborhoods* and is not clearly a penalty as analyzed in *Kline*.

*In re C–T of Virginia, Inc.*, 135 B.R. 501, 503 (W.D.Va.1991).