No. 95-2289

In re: Juvenile Shoe            *
Corporation of America,         *
                                *
                     Debtor,    *
                                *
United States of America,  *
                                *
                     Appellee,  *   Appeal from the United States
                                *   District Court for the
          v.                    *   Eastern District of Missouri.
                                *
Juvenile Shoe Corporation  *
of America,                     *
                                *
                     Appellant, *
                                *
Unsecured Creditors Committee,  *
James S. Cole,                  *
                                *
                     Trustees.  *


                Submitted:   September 12, 1996

                Filed:   November 7, 1996


Before BEAM, HEANEY, and MORRIS SHEPPARD ARNOLD, Circuit Judges.


HEANEY, Circuit Judge.


     This appeal presents the question of whether a fifteen percent flat tax levied on funds reverted to an employer from an over-funded employee pension plan constitutes an excise tax or a nonpecuniary-loss penalty for purposes of establishing priority in a bankruptcy proceeding.  The bankruptcy court held that the tax levied pursuant to 26 U.S.C. § 4980 (1988) constitutes a nonpecuniary-loss penalty.  The district court reversed and we now affirm.

In 1989, Juvenile Shoe Corporation ("Juvenile Shoe") separated its employee pension plan into two separate plans:  one for retired employees, and the other for active employees.  Juvenile Shoe then liquidated the retiree plan, paying out the amount due to each plan participant and beneficiary under the plan's provisions.  After the payout, surplus funds in the amount of $2.3 million remained, which Juvenile Shoe reverted to itself for corporate use.[1]  Twenty-two days after the reversion, Juvenile Shoe declared bankruptcy.

Shortly thereafter, the Internal Revenue Service (IRS) filed an unsecured priority claim with the bankruptcy court for a reversion tax against Juvenile Shoe pursuant to 26 U.S.C. § 4980.[2]  The IRS asserted that the assessment constitutes an excise tax and therefore is entitled to

---

[1] Section 4980 defines an "employer reversion" as "the amount of cash and the fair market value of other property received (directly or indirectly) by an employer from the qualified plan." 26 U.S.C. § 4980(c)(2)(A) (1988).

[2] 26 U.S.C. § 4980(a)-(b) provides:

**(a) Imposition of tax**

There is hereby imposed a tax of 15 percent of the amount of any employer reversion from a qualified plan.

**(b) Liability for tax**

The tax imposed by subsection (a) shall be paid by the employer maintaining the plan.

seventh priority under section 507(a)(7) of the Bankruptcy Code.[3]  The
bankruptcy plan committee

---

[3]Section 507(a)(7) provides, in relevant part:

(a) The following expenses and claims have priority
in the following order:
. . . .
　　(7) Seventh, allowed unsecured claims of
governmental units, only to the extent that
such

claims are for-
　. . . .
　　　　(E) an excise tax on-
　　　　　　(i) a transaction occurring
before the date of the filing of
the petition for which a return,
if required, is last due, under
applicable law or under any
extension, after the three years
before the date of the filing of
the petition . . . .

11 U.S.C. § 507(a)(7)(E)(i) (1988).  Under section 4980(c)(4),
employer reversions must be reported on a return and would
therefore be governed by this section if determined to be an excise
tax.

representing Juvenile Shoe's unsecured creditors stipulated to the amount owed under section 4980 but disputed that the assessment constitutes an excise tax; rather, the committee argued that the assessment constitutes a nonpecuniary-loss penalty and that it should be subordinated to the claims of other unsecured creditors. The IRS filed a motion for summary judgment. The bankruptcy court agreed with the committee that the section 4980 tax constitutes a penalty and subordinated the claim to other unsecured creditors. The IRS appealed the decision to the district court,[4] which reversed and remanded for further proceedings. The bankruptcy plan committee now appeals.

## II.

The Supreme Court recently addressed the issue raised in this appeal relating to a different statutory assessment. In United States v. Reorganized CF & I Fabricators, Inc., ("Reorganized CF & I"), 116 S. Ct. 2106, 2110 (1996), the Court determined that the tax imposed under 26 U.S.C. § 4971 (1988) on an employer that under funds an employee pension plan constitutes a nonpecuniary-loss penalty for purposes of priority in bankruptcy proceedings. To

---

[4]The matter was argued before a magistrate judge by consent of the parties pursuant to 28 U.S.C. § 636(c)(3) (1992).

determine whether an assessment is an excise tax or a penalty, a court looks beyond the assessment's label to "the operation of the provision." Reorganized CF & I, 116 S. Ct. at 2106. The Court defined a tax as "a pecuniary burden laid upon individuals or property for the purpose of supporting the government." Id. at 2113 (quoting New Jersey v. Anderson, 203 U.S. 483, 492 (1906)). A penalty, in contrast, is "an exaction imposed by statute as punishment for an unlawful act." Id. (citing United States v. La Franca, 282 U.S. 568, 572 (1931)). Applying the Reorganized CF & I standard to section 4980, we are persuaded that the provision levies an excise tax for the purpose of bankruptcy prioritization.

To determine the purpose of section 4980, we begin by looking at the statutory language. See Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 254 (1992). Although the section is located under Subtitle D, labeled "Miscellaneous Excise Taxes," section 4980 makes no reference to its provision specifically as an "excise tax." We are not guided by the placement of the statute because the placement of a provision in the Internal Revenue Code gives no inference of legislative construction. See Reorganized CF & I, 116 S. Ct. at 2113; see also 26 U.S.C. § 7806(b) (1988). Moreover, in the bankruptcy context, courts apply well-established principles that Congress must specifically abrogate if Congress intends to alter the way a court conducts statutory interpretation. See Reorganized CF & I, 116 S. Ct. at 2113 (citing Midatlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection, 474 U.S. 494, 501 (1986)). The labelling included in the enactment is not conclusive as to the nature of an assessment. See City of New York v. Feiring, 313 U.S. 283, 285 (1941) (holding that a court places no weight on the label of a tax, but looks to the "incidents" of the statute to determine whether the levy is a tax for the purpose considered).

The language of section 4980 does not provide conclusive evidence that Congress intended a means of interpreting whether

section 4980 levies an excise tax distinct from the established rules for that purpose in the bankruptcy context. Absent a clear statement demonstrating congressional intent to place authoritative weight on the statutory labelling of section 4980, we next look to the "operation of the provision."

As discussed by the district court, the tax levied by section 4980 recaptures revenue that is lost to the government and discourages employers from reverting excess funds from employee pensions. In re Juvenile Shoe Corp. of Am., 180 B.R. 206, 209 (E.D. Mo. 1995) (citing H.R. Rep. No. 881, 101st Cong., 2d Sess. 52 (1990) reprinted in 1990 U.S.C.C.A.N. 2017, 2066). Under the Internal Revenue Code, Congress granted a corporate tax exemption to employers for placing money in an employee pension fund. See 26 U.S.C. § 401(a) (1988). As the pension fund grows, it includes earnings on the money that would have been taken as tax revenue at the corporate tax rate had it not been placed in the pension fund. Although the employer must pay the corporate tax rate on funds reverted from the pension plan, see 26 U.S.C. § 11 (1988), the employer earns interest while the funds are in the pension plan, and the government is denied the use of the tax revenue during the same period forcing the government to borrow from other sources to fund its operations. Capturing the tax benefit the employer received at the expense of the government has the same purpose and similar effect as assessing the tax prior to the employer's placement of the funds in the pension plan. See In re C-T of Virginia, Inc., 977 F.2d 137, 140 (4th Cir. 1992) (holding in a pre-Reorganized CF & I decision that section 4980 operates primarily to generate revenue), cert. denied, 507 U.S. 1004 (1993).[5]

---

[5]In reaching its conclusion, the Fourth Circuit used a test similar to Reorganized CF & I for determining whether a levy constitutes an excise tax or a penalty. The court concluded that taxes are "pecuniary burdens laid upon individuals or their property, regardless of their consent, for the purpose of defraying the expenses of the government or of undertakings authorized by it." In re C-T of Virginia, Inc., 977 F.2d at 139 (quoting City of New York v. Feiring, 313 U.S. 283, 285 (1941)). A penalty, by contrast, is "[a]n enactment which has as its purpose the punishment of conduct perceived as wrongful . . . regardless of the terminology employed by the legislature." Id. at 139 (quoting In

To recapture the revenue lost to the government, Congress chose a flat tax on the amount reverted to the corporation. See 26 U.S.C. § 4980(a) (1988);[6] H.R. Rep. No. 881, 101st Cong., 2d Sess. 52 (1990) reprinted in 1990 U.S.C.C.A.N. 2017, 2066. Although Congress could have enacted a tax based on a complex formula that would more accurately reflect the government's loss of revenue, the government chose the efficiency and simplicity of a flat rate. See In re C-T of Virginia, Inc., 128 B.R. 628, 630-31 (Bankr. W.D. Va. 1991). Appellants argue that the assessment is penal because the rate of tax exceeds the benefit derived; yet the General Accounting Office submitted a report to a congressional subcommittee considering an increase in the tax rate under section 4980 that showed that in many cases a 15% tax is not sufficient to recapture tax benefits received by an employer. H.R. Rep. 881, 101st Cong., 2d Sess. 52 (1990), reprinted in 1990 U.S.C.C.A.N. 2017, 2066.

The Reorganized CF & I definition of a penalty requires that the exaction be imposed "as punishment for an unlawful act." Although Congress disfavors the reversion of pension plan funds to employers,[7] it has not made such reversions unlawful, instead

---

re Kline, 403 F. Supp. 974, 978 (D. Md. 1975)).

[6]Originally, section 4980 imposed a 10% tax. See 26 U.S.C. § 4980 (Supp. IV 1986). Congress had raised the rate to 15% at the time of the reversion in this case. The rate is now 20%. 26 U.S.C. §4980(a) (1994).

[7]Congress prefers that over-funded benefits remain in pension plans to ensure the financial stability of the funds or go to the pension beneficiaries. H.R. Rep. No. 881, 101st Cong., 2d Sess. 52 (1990), reprinted in 1990 U.S.C.C.A.N. 2017, 2065-66. As appellant points out, over-funded pension benefits given to the pension beneficiaries are not assessed a reversion tax. See 26 U.S.C. § 4980(c)(2)(B)(i).

giving employers that inadvertently over fund their employee pension plans the right to revert the overfunding.[8]  See H.R. Rep. No. 881, 101st Cong., 2d Sess. 52 (1990), reprinted in 1990 U.S.C.C.A.N. 2017, 2066.  Further, as noted by the Fourth Circuit, the fact that an excise tax on alcohol, tobacco, or certain conduct also affects behavior in a fashion intended by Congress does not make the tax a penalty.  In re C-T of Virginia, Inc., 977 F.2d at 140 n.8; cf. Sonzinsky v. United States, 300 U.S. 506, 513 (1937) (noting that "a tax is not any less a tax because it has a regulatory effect").  Because we determine that, for the reasons above, section 4980 primarily raises revenue for the operation of the government, it fits the Supreme Court's definition of an excise tax.

Despite our determination that the legislative history of section 4980 is inconclusive, it nonetheless provides support for our conclusion that Congress intended to levy an excise tax on employer reversions.  In considering the statute, Congress described the assessment as a "non-deductible excise tax on a reversion occurring upon the termination of a qualified plan."  Tax Reform Act of 1986, Pub. L. No. 99-514, 1986 U.S.C.C.A.N. (100 Stat.) 4075, 4570.  Further, the relevant provision in the Tax Reform Act of 1986 is captioned:  "Excise tax on reversion of qualified plan assets to employer."  Id., 100 Stat. at 2478.  Also, the conference agreement for changing the section 4980 tax from 10% to 15% refers to the levy as an "excise tax" four times in the

---

[8]Congress specifically allows employers to revert funds from pension plans upon termination under section 4980 if an overfunding occurred to "actuarial error."  H.R. Rep. No. 391(I), 100th Cong., 1st Sess., 110, reprinted in 1987 U.S.C.C.A.N. 2313-1, 2313-84. Congress has also considered providing a mechanism for allowing employers to revert pension surpluses without requiring them to terminate the pension plans.  Id. at 2313-85.

opening paragraph. H.R. Conf. Rep. No. 1104, 100th Cong., 2d Sess. 129 (1988), reprinted in 1988 U.S.C.C.A.N. 5048, 5189.

In contrast, section 4971, the provision examined in Reorganized CF & I, provides a clear example of an assessment that constitutes a nonpecuniary-loss penalty.[9]  The Court focused on the "obviously penal character" of its provisions, particularly the one that levies a tax equivalent to 100% of the funding deficiency. Reorganized CF & I, 116 S. Ct. at 2113.[10]  Section 4971 was not enacted to generate or recapture revenue for the operation of the government.  The statute imposes a tax on conduct that does not deny the government any tax revenue.  In fact, when an employer fails to fund a pension plan on time, the government benefits by receiving tax revenue early because the employer cannot claim a tax exemption on the amount under funded until it places the funds into the employee pension fund.

Unlike the law at issue here, the intent of the section 4971 is to deter all underfunding of employee pension plans. See Reorganized CF & I, 116 S. Ct. at 2114 (citing H.R. Rep. No. 807, 93d Cong. 2d Sess. 28 (1974). In addition, the conduct taxed pursuant to section 4971 is prohibited by federal law.  See 29 U.S.C. § 1001 (1988) (setting forth the minimum federal standards for pension funding levels).  As the Court pointed out, Congress's clear intention was to penalize employers who fail to comply with

---

[9]Section 4971 imposes a flat tax rate of 10% on any amount an employer under funds an employee pension fund.  See Employee Retirement Income Security Act of 1974, 88 Stat. 935, (codified at 29 U.S.C. § 1001 (1988)).  If the employer does not correct the underfunding within the statutory period, section 4971(b) increases the tax to 100%.

[10]The Court also noted that, even after paying the 100% tax for under funding the plan, the employer remained liable for claims by the Pension Benefit Guarantee Corporation for the entire amount of the underfunding under 29 U.S.C. § 1362(b)(1)(A) (1988). Reorganized CF & I, 116 S. Ct. at 2113-14.

statutory pension funding requirements.  <u>Reorganized CF & I</u>, 116 S. Ct. at 2114 (quoting H.R. Rep. No. 93-807, p. 28 (1974)) ("The bill provides new and more effective penalties where employers fail to meet the funding standards.").

### III.

Accordingly, because the primary operation of section 4980 is to support the government rather than to penalize an unlawful act, we affirm the district court and hold that the assessment constitutes an excise tax entitled to seventh priority under 11 U.S.C. § 507(a)(7).[11]

BEAM, Circuit Judge, dissenting.

The government requested a stay in this matter pending the Supreme Court's decision in <u>United States v. Reorganized CF&I Fabricators, Inc.</u>, 116 S. Ct. 2106 (1996), asserting that the decision would "in all likelihood control the outcome of this case." <u>Reorganized CF&I</u> determined that an identical tax assessment under an almost identical statute was, indeed, a nonpecuniary loss penalty for purposes of priority in a bankruptcy proceeding.  The government, recovering from its surprise, reversed its field and now attempts to distinguish this case from <u>Reorganized CF&I</u>.  I disagree with this tactic and also disagree with the court's analysis of the nature and character of the fifteen percent assessment under the standards established in <u>Reorganized CF&I</u>.

---

[11]As noted by the Supreme Court, the Bankruptcy Reform Act of 1994, 108 Stat. 4132 § 304(c) (codified at 11 U.S.C. § 507 (1996)), added a new seventh priority, moving the relevant provision from seventh (section 507(a)(7)) to eighth (section 507(a)(8)). <u>Reorganized CF & I</u>, 116 S. Ct. at 2109 n.1.  Our determination that section 4980 operates as an excise tax applies equally to the new prioritization scheme.

The court depends largely upon its belief that the fifteen percent assessment compensates the government for pecuniary loss resulting from taxes not collected on the excess funds directed into the pension plan but now returned to the employer.  This reasoning is flawed.

First, ordinary income taxes are levied upon the returned funds.  Tax revenues are collected on both the initial amounts directed into the fund and accrued earnings, if any.

Second, the penalty is assessed whether or not the employer has actually enjoyed tax benefits and without regard to whether there has been any revenue loss by the government.  A company operating at a loss would have no benefit from a deduction for funds directed into the plan.  If the plan has had no earnings because of the nature of its investments, there would be no tax losses by the government from untaxed income within the plan.  Also, the flat rate penalty is assessed without regard to the length of time the returned funds have been held by the plan.

Third, had the returned funds been directed to employees instead of the coffers of the employer, no assessment would have been levied at all. Thus, in reality, there is no discernible relationship between the penalty and revenue purportedly lost by the government.

I agree with the bankruptcy court that the assessment is simply a penalty.  I would reverse.

A true copy.

    Attest:


        CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.


11