NEW NEIGHBORHOODS, INC.,
Plaintiff–Appellant,

v.

WEST VIRGINIA WORKERS'
COMPENSATION FUND,
Defendant–Appellee.

No. 88–1360.

United States Court of Appeals,
Fourth Circuit.

Submitted May 1, 1989.

Decided Oct. 2, 1989.

Ray A. Byrd, Daniel A. Tomassetti, Schrader, Stamp, Byrd, Byrum & Companion, Wheeling, W.Va., on brief, for plaintiff-appellant.

Donald L. Hall, Sr. Asst. Atty. Gen., on brief, for defendant-appellee.

Before PHILLIPS and MURNAGHAN, Circuit Judges, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.

FRANK A. KAUFMAN, Senior District Judge.

New Neighborhoods, Inc. appeals an order of the United States District Court for

the Northern District of West Virginia, filed September 21, 1988, holding that premiums due to be paid to the Workers' Compensation Fund of the State of West Virginia (Fund) are excise taxes for purposes of 11 U.S.C. § 507(a)(7)(E), and are therefore entitled to priority status in bankruptcy. In so concluding, the District Court set aside the Order of the Bankruptcy Court, filed April 25, 1988, holding that such premiums were not excise taxes within the meaning of the Bankruptcy Code. We affirm the judgment of the District Court.

## I.

11 U.S.C. § 507(a)(7)(D) and (E), which are parts of the Bankruptcy Code, provide in relevant part:

(a) The following expenses and claims have priority in the following order:

. . . . .

(7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—

. . . . .

(D) an employment tax on a wage, salary, or commission of a kind specified in paragraph (3) of this subsection earned from the debtor before the date of the filing of the petition, whether or not actually paid before such date, for which a return is last due, under applicable law or under any extension, after three years before the date of the filing of the petition;

(E) an excise tax on—

(i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or

(ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition;

. . . . .

In this case, the sole question presented is whether the premiums due the Fund constitute excise taxes within the meaning of section 507(a)(7)(E).

## II.

■ The answer to that question initially requires analysis of the West Virginia Workers' Compensation statute. That law establishes a comprehensive system of mandatory workers' compensation. While some states require employers to carry insurance (if they can obtain the same) through private insurance carriers in order to fund compensation claims, West Virginia requires an employer to fund payment of benefits either by subscribing to the Fund or by electing to obtain from the West Virginia State Compensation Commissioner (Commissioner) authority to opt-out of the Fund and to become a self-insurer as an employer sufficiently financially responsible to ensure payment of compensation to injured employees or their dependents. W.Va.Code § 23–2–9 (1988). While employers permitted to self-insure need not make premium payments to the Fund, each self-insurer must post a bond with the Fund in an amount approved by the Commissioner as sufficient to secure payment of compensation to employees, must file with the Commissioner a sworn statement of the total earnings of all employees subject to the statute, and must pay to the Fund a total sum sufficient to cover his proper portion of (a) the expenses of administration of the Fund, (b) the amounts needed to cover the premiums of employers who are delinquent in payment, and (c) the costs of the disabled workers' relief fund. W.Va. Code § 23–2–9 (1988). If an employer fails to meet his obligations, the Commissioner can deprive him of his status as a self-insurer and require him to make premium payments to the Fund. *See UMWA v. Lewis*, 309 S.E.2d 58, 65 (W.Va.1983). All claims by employees are filed with and processed by the Fund, including claims by employees of self-insurers. In the case of a self-insurer, the Fund issues a pay order to the employer directing payment of benefits rather than making compensation payments itself to the employee.

As is true under most workers' compensation laws, a West Virginia employer covered by the law is relieved of liability for

damages in tort suits by employees if the said employer complies with the statute. W.Va.Code § 23–2–6 (1988). Instead of their common law right to seek damages in a tort action against their employer, West Virginia employees recover compensation for injuries according to schedules established by the statute.

The Commissioner is authorized to set premium rates for employers within a given group so as to reflect the nature of the business, degree of hazard and the individual employer's record. W.Va.Code § 23–2–4 (1988). Adjustments may also be made by the Commissioner for seasonal employers, during periods in which employment is "significantly reduced." W.Va. Code § 23–2–5 (1988).

The Commissioner is empowered in the name of the State of West Virginia to commence a civil action against an employer who has failed to make any required payment. W.Va.Code § 23–2–5a (1988). Any unpaid payment and interest thereon is a personal obligation of the employer and constitutes a lien against all of his property. W.Va.Code § 23–2–5a (1988). If an employer is in default for two calendar quarters, the Commissioner may bring a civil action to enjoin the employer from carrying on business in West Virginia. Further, any employer who knowingly fails to subscribe to the Fund or to perform any required act or duty shall be guilty of a misdemeanor and shall be subject to a maximum $5,000 fine. W.Va.Code § 23–1–16 (1988). The statute permits the Commissioner to obtain from the State Tax Commissioner and/or the Commissioner of the Department of Employment Security names, addresses and other information regarding employers' tax returns and wages paid by employers to employees. W.Va.

Code § 23–2–2 (1988). Finally, all defaulting employers are subject to common law tort suits by employees and, in addition, such employers lose the common law defenses of the fellow-servant rule, assumption of risk and contributory negligence. W.Va.Code § 23–2–8 (1988). No employer or employee may become exempt from the West Virginia workers' compensation law by any contract, agreement, rule or regulation. W.Va.Code § 23–2–7 (1988).

### III.

The question of whether a payment of premiums under a state's workers' compensation insurance statute constitutes an "excise tax" as that term is used in 11 U.S.C. § 507(a)(7)(E) has been approached in different ways by those courts in which the issue has been presented. One approach has featured a broad coverage definition of "excise tax." *See, e.g., In re Pan American Paper Mills*, 618 F.2d 159 (1st Cir.1980) (involving the Puerto Rico Workmen's Accident Compensation Act and dealing with the Bankruptcy Act of 1898); *State Industrial Accident Commission v. Aebi*, 177 Or. 361, 162 P.2d 513 (1945) (involving Oregon's Workmen's Compensation Act and the Bankruptcy Act of 1898); *In re Tri–Manufacturing and Sales Co.*, 82 B.R. 58 (Bkrtcy.S.D.Ohio 1988) (dealing with Ohio's workers' compensation law and Bankruptcy Code § 507, and pointing out differences between section 507 and section 64 of the 1898 Act);[1] *In re E.A. Nord Co., Inc.*, 75 B.R. 634 (Bkrtcy.W.D.Wash.1987) (dealing with the Washington State Industrial Insurance Fund and section 507(a)(7) of the Bankruptcy Code); *In re Beaman*, 9 B.R. 539 (Bkrtcy.D.Or.1980) (dealing with Oregon's workmen's compensation law and

---

**1.** "We are thus faced with the question of whether *Pan American Paper Mills* can be said still to be valid under the Bankruptcy Code, or whether a change was wrought in the law, wittingly or unwittingly, by the Congress when it undertook to specify kinds of taxes entitled to priority, instead of the simple all-embracing statement about taxes which was employed in the Bankruptcy Act." *Tri–Manufacturing*, 82 B.R. at 60. In that latter case, the Bankruptcy Court stated that "it is our conclusion that the holding in *Pan American Paper Mills, Inc.*, cited with approval

in this circuit in [*In re Mansfield Tire and Rubber Co.*, 660 F.2d 1108 (6th Cir.1981) ] continues to be valid under the Bankruptcy Code. The language employed by the court in *Pan American Paper Mills* at p. 162, concluding that workers' compensation premiums were taxes under § 64 of the Bankruptcy Act because they were pecuniary obligations imposed by the government for the purpose of defraying the expenses of an undertaking which it authorized, squares entirely with the language by which 'excise tax' is defined." *Id.*

section 507(a)(7)). *See also In re Mansfield Tire and Rubber Co.*, 660 F.2d 1108 (6th Cir.1981) (dealing with section 64(a)(4) of the Bankruptcy Act of 1898).

A second approach has analyzed the workers' compensation statute of the state in question in order to determine whether the statute possesses more tax attributes or more insurance attributes, and has caused several bankruptcy courts to hold that the predominance of insurance characteristics requires the conclusion that statutory workers' compensation law premiums are not excise taxes under the Bankruptcy Code. *In re Smith Jones, Inc.*, 36 B.R. 408 (Bkrtcy.D.Minn.1984) (with relation to Ohio's workers' compensation statute); *In re Payne*, 27 B.R. 809 (Bkrtcy.D.Kan.1983) (with regard to Kansas Worker's Compensation Act and the Bankruptcy Code).

A third approach stresses whether, regardless of the insurance attributes of a particular state statute, there are sufficient tax attributes present in the statute to call for coverage within the term "excise taxes." *See In re Pan American Mills Paper Corp.*, 618 F.2d at 162 (*citing State Industrial Accident Commission v. Aebi*, 162 P.2d at 516); *In re Intern. Automated Machines, Inc.*, 9 B.R. 575 (Bkrtcy.N.D. Ohio 1981).

Appellant New Neighborhoods, Inc. contends that the West Virginia workers' compensation system establishes a state system of insurance, and asks this Court to adopt the approach of those courts which have considered determinative the predominance of the insurance attributes of their state statutes—a predominance which appellant claims for the West Virginia statute involved in this case.

■ Whether workers' compensation premiums are taxes entitled to priority as excise taxes pursuant to 11 U.S.C. § 507(a)(7)(E) is to be determined as a matter of federal law so that the priority provision in the Bankruptcy Code can be "nationwide in its application," *City of New York v. Feiring*, 313 U.S. 283, 285, 61 S.Ct. 1028, 1029, 85 L.Ed. 1333 (1941) (involving a New York City sales tax); *In re Pan American Paper Mills, Inc.*, 618 F.2d at

162, and must be answered by reference to the "terms and purposes" of the bankruptcy statute. *City of New York v. Feiring*, 313 U.S. at 285, 61 S.Ct. at 1029. Designation by a state of payments as "premiums" in its statute is not determinative; the "label" does not control. *Id. See also In re Payne*, 27 B.R. at 813. Rather, analysis of both the language of section 507(a)(7)(E) and of its purposes is required to determine under what conditions such priority exists.

■ Statutory priorities, as set forth in the Bankruptcy Code, are intended "to assure payment, if possible, to certain classes of claims by requiring that they be paid before others are satisfied." L. King, *Collier Bankruptcy Manual* § 507.01 (1988). In *City of New York v. Feiring*, the Supreme Court stated that for the purposes of priority under the Bankruptcy Act, taxes include "those pecuniary burdens laid upon individuals or their property, regardless of their consent, for the purpose of defraying the expenses of government or of undertakings authorized by it." *Id.* 313 U.S. at 285, 61 S.Ct. at 1029. Thus, a payment may be classified as a tax if the state has compelled the payment and if the payment serves a public purpose. *See In re Pan American Paper Mills*, 618 F.2d at 162. Accordingly, some courts have held that the words "excise taxes" as used in both the Bankruptcy Act and the Bankruptcy Code "include all types of involuntary exactions, regardless of name, levied by the Federal and state governments for governmental or public purposes." *In re Mid America Co.*, 31 F.Supp. 601, 604 (S.D.Ill. 1939) (dealing with the Illinois Unemployment Compensation Act and the Bankruptcy Act of 1898); *see also State Industrial Accident Commission v. Aebi*, 162 P.2d at 518; *In re Tri–Manufacturing and Sales Co.*, 82 B.R. at 60.

The premiums which employers subject to the West Virginia workers' compensation law are required to pay to the Fund constitute pecuniary burdens upon them for a public, governmental purpose. *See In re E.A. Nord Co.*, 75 B.R. at 636; *In re Beaman*, 9 B.R. at 541–42. The "public" purpose of systems such as the one in force

and effect in West Virginia is to allocate the burden of the costs of injured employees and/or of their dependents among employers rather than among the general public. *See State Industrial Accident Commission v. Aebi,* 162 P.2d at 516. While that purpose may be thought of as a funding mechanism for a specific state undertaking—that of providing for injured employees and their dependents—that in no way alters the fact that funds collected through the system serve a public purpose of compensating those employees who otherwise might require public support if their common law tort claims could not be successfully asserted. *See Meadows v. Lewis,* 307 S.E.2d 625, 638 (W.Va.1983).

■■■ The priority section at issue under the Bankruptcy Code extends priority to various types of taxes. The only type of tax possibly given priority status by the Code, which could be interpreted to include workers' compensation premiums, is an excise tax. *See In re Smith Jones, Inc.,* 36 B.R. at 411.[2] An excise tax is an indirect tax, one not directly imposed upon persons or property, *see In re Beaman,* 9 B.R. at 541, and is one that is "imposed on the performance of an act, the engaging in any occupation, or the enjoyment or [sic] a privilege." *In re Tri–Manufacturing and Sales Co.,* 82 B.R. at 60. Several courts, in concluding that workers' compensation premiums are excise taxes within the meaning of section 507(a)(7)(E), have focused upon the definition of "excise tax" set forth in *Feiring,* namely, that an excise tax is a pecuniary obligation imposed by a government to defray expenses of an authorized undertaking, *see, e.g., In re Tri–Manufacturing and Sales Co.,* and have concluded that the Congress in using the term "excise tax" intended for that category to "include all indirect taxes not otherwise included in section 507(a)(6)."[3] *In re Beaman,* 9 B.R.

at 541. The obligation imposed upon employers by the West Virginia statute is imposed upon employers as a class and liability arises through the transaction or act of employing. *In re Payne,* 27 B.R. at 814. Thus, participation in the West Virginia workers' compensation system is, as indicated *supra,* compulsory for employers and compelled by the state. Also, the Fund exists for the benefit of employees and the public generally.

■■■ Exceptions to discharge are usually construed in favor of the debtor. Further, ambiguities in the Code are generally resolved in favor of the debtor, *see In re Payne,* 27 B.R. at 817. Indeed, there is a need carefully to limit priority claims in bankruptcy. *See In re Lorber Industries of California, Inc.,* 675 F.2d 1062 at 1068 (9th Cir.1982); *In re Payne,* 27 B.R. at 817. Every priority claim lessens the dividend, if any, of a general creditor in the event of bankruptcy, and so many general creditors are "little fellows." But so are the injured employees who depend upon the financial soundness of the Fund and are thus indirectly benefited by priority status in bankruptcy.

■■■ It is also to be noted that the West Virginia system features numerous "insurance" characteristics, such as the references to "premiums," the variable premium rates provided, and the option of self-insurance subject to the Commissioner's approval.[4] Nevertheless, the obligation upon employers to provide and pay for workers' compensation coverage is a pecuniary burden placed upon employers by the state. The fact that the funds are raised solely to satisfy workers' compensation claims does not necessarily transform those payments into something other than

---

**2.** Rather clearly, the payments which employers are required to make under the West Virginia or similar workers' compensation laws are not "employment" taxes within the meaning of 11 U.S.C. § 507(a)(7)(D).

**3.** 11 U.S.C. § 507(a)(6) is the predecessor section of the current 11 U.S.C. § 507(a)(7).

**4.** The West Virginia statute does place obligations upon a *limited* group of persons, i.e., certain employers. But an exaction is not deprived of its capability of being a tax because it is not generally applicable beyond the confines of a given class. *State Industrial Accident Commission v. Aebi,* 162 P.2d at 517; *In re Int'l Automated Machines, Inc.,* 9 B.R. at 577.

taxes.[5] Nor does the fact that, under the holding we state in this case, a state agency is given, as an insurer, priority in bankruptcy when a private insurer is not tip the scales against construing the workers' compensation premiums as "excise taxes";[6] such a difference is really only a "distinction between the sovereign power of the state and the rights of private citizenry." *State Industrial Accident Commission v. Aebi*, 162 P.2d at 517.

## IV.

 It is true that West Virginia's legislature enacted its Workers' Compensation Act under the police power—not under the revenue-raising power. But that alone is also not determinative. *In re Mid America Co.*, 31 F.Supp. at 604; *In re Lorber Industries of California, Inc.*, 675 F.2d at 1066. What is determinative, under the *federal* standard announced by the Supreme Court, *City of New York v. Feiring*, 313 U.S. at 285, 61 S.Ct. at 1029 is that the purpose of the Congress in enacting 11 U.S.C. § 507(a)(7)(E) has been satisfied because West Virginia by statute has compelled employers to pay premiums into the Fund, or to carry substitute insurance, in the public interest. *See In re Pan Ameri-*

*can Paper Mills*, 618 F.2d at 162; *In re Lorber Industries of California*, 675 F.2d at 1066;[7] *United States v. New York*, 315 U.S. 510, 515–16, 62 S.Ct. 712, 714–15, 86 L.Ed. 998 (1942); *New Jersey v. Anderson*, 203 U.S. 483, 27 S.Ct. 137, 51 L.Ed. 284 (1906); *In re Mansfield Tire and Rubber Co.*, 660 F.2d at 1110. While we recognize that under that standard, many governmental exactions may be "excise taxes" for purposes of 11 U.S.C. § 507(a)(7), that result in a case such as this accords with the purpose of Congress in providing for priorities in bankruptcy.

 Nor can appellant prevail in this appeal upon the ground that the District Court's judgment offends the Equal Protection Clause of the Fourteenth Amendment. Appellant takes the position that all employers are not treated equally because certain employers may opt-out of the West Virginia system while others must subscribe, and because employers are assessed differing premium rates according to certain factors including their own individual safety records. That last-stated argument need not long detain us. The states are under no "rigid rule of equality of taxation," *Carmichael v. Southern Coal & Coke Co.*, 301 U.S. 495, 509, 57 S.Ct. 868,

---

5. There is no West Virginia statute which takes note of 11 U.S.C. § 507(a)(7)(E) in the way in which a West Virginia statute takes note of 11 U.S.C. § 507(a)(7)(D), dealing with employment taxes. Section 21A–5–18(2) (1945) of the laws of West Virginia reads as follows:

In the event of an employer's adjudication in bankruptcy, judicially confirmed extension proposal, or composition, under the Federal Bankruptcy Act of one thousand eight hundred ninety-eight, as amended, claims for payments then or thereafter due and interest thereon, which have not been reduced to a lien, shall be entitled to such priority as is provided in said Bankruptcy Act for taxes due any state of the United States.

But the references in section 21A–5–18(2) to subsection (D) of the Bankruptcy Code, and the lack of reference in any West Virginia statute to subsection (E) of the Bankruptcy Code, while recognizable as a leaning post for argument in favor of excluding premiums for workers' compensation insurance from the coverage of "excise taxes" under subsection E, are not controlling, *see In re King*, 19 B.R. 936, 939 (Bkrtcy.E. D.Tenn.1982); *In re Beaman*, 9 B.R. at 541; rather, it is the substantive purpose of the West

Virginia workers' compensation statute which controls.

6. The word "premiums" appears many times in the West Virginia Workers' Compensation statute. However, that does not mean that the statute creates insurance on the same level as private insurance companies. Rather, the workers' compensation statute is a law with a distinctive public purpose. *See Crown Zellerbach Corp. v. Dep't of Labor and Industries of the State of Washington*, 98 Wash.2d 102, 653 P.2d 626 (1982).

7. In *In re Lorber*, at 1066, the Ninth Circuit listed the following as elements which characterize an exaction of a tax:

(a) An involuntary pecuniary burden, regardless of name, laid upon individuals or property;

(b) Imposed by, or under authority of the legislature;

(c) For public purposes, including the purposes of defraying expenses of government or undertakings authorized by it;

(d) Under the police or taxing power of the state.

872, 81 L.Ed. 1245 (1937), and may tailor tax programs to fit "local needs and usages." *Madden v. Kentucky*, 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590 (1940). "The presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes." *Id.* (footnote omitted). The equal protection clause in this context requires only that the states "proceed upon a rational basis and ... not resort to a classification that is palpably arbitrary." *Allied Stores of Ohio v. Bowers*, 358 U.S. 522, 527, 79 S.Ct. 437, 441, 3 L.Ed.2d 480 (1959). Here we have no trouble determining that West Virginia has acted reasonably in apportioning insurance obligations based upon an employer's type of business and history of liability.

■■■ Appellant also argues that if the sums due and payable by employers under West Virginia's Workers' Compensation Act are held to be "excise taxes" pursuant to 11 U.S.C. § 507(a)(7)(E), the West Virginia act as so construed and applied would be violative of Article X, § 1 of the West Virginia Constitution which provides that "taxation shall be equal and uniform throughout the state." Assuming, *arguendo* only, that appellant's position is correct—a proposition concerning which we have considerable doubt—that would not alter the duty of this Court to apply *federal law* in construing and applying the Bankruptcy Code and the further duty to leave it to West Virginia's judicial and legislative branches of government to decide whether the Constitution of West Virginia requires state judicial invalidation and/or legislative amendment. *Cf. Murdock v.*

*City of Memphis*, 20 Wall. 590, 22 L.Ed. 429 (1875).[8]

## V.

The judgment of the District Court is AFFIRMED.

---

**8.** In a context other than its workers' compensation system, the Supreme Court of Appeals of West Virginia has rejected a challenge to the West Virginia privilege tax on businesses, stating that while different rates may be prescribed for different businesses, "the rate of taxation must be uniform and equal within the classification." *Arslain v. Alderson*, 126 W.Va. 880, 30 S.E.2d 533, 537 (1944). *See also Appalachian Electric Power Co. v. Koontz*, 138 W.Va. 84, 76 S.E.2d 863, 869–70 (1953); *Armco, Inc. v. Hardesty*, 303 S.E.2d 706, 718 (W.Va.1983), *rev'd on other grounds*, 467 U.S. 638, 104 S.Ct. 2620, 81 L.Ed.2d 540 *reh'g denied*, 469 U.S. 912, 105 S.Ct.

285, 83 L.Ed.2d 222 (1984). The West Virginia Workers' Compensation system assesses premiums based on a number of factors in addition to occupation, including seasonality of work and risk of loss. Those factors are among the typical factors which insurance carriers consider in establishing rates. Because West Virginia's Workers' Compensation law classifies employers on the basis of risk, loss and other seemingly reasonable characteristics and treats all employers equally, the system would appear fair and nondiscriminatory. But as to appellant's specific challenge under the West Virginia Constitution, this Court expresses no view.