### In re JUVENILE SHOE CORPORATION OF AMERICA, Debtor.

### Bankruptcy No. 89–41225–293.

United States Bankruptcy Court, E.D. Missouri, E.D.

March 14, 1994.

---

Joseph Braunstein, Riemer & Braunstein, Boston, MA, for Disbursing Agent for debtor.

Steven LaBounty, Dist. Counsel, I.R.S., St. Louis, MO., S. Hollis Fleischer, Trial Atty., Office of Sp. Litigation Tax Div., U.S. Dept. of Justice, Washington, DC, for I.R.S.

Scott A. Greenberg, Davis & Davis, Clayton, MO.

## MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

### JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, 157 and Local Rule 29 of the United States District Court for the Eastern Division of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A); which the Court may hear and determine.

### PROCEDURAL BACKGROUND

On March 28, 1989, Juvenile Shoe Corporation of America (Debtor) filed a petition for bankruptcy relief under Chapter 11 of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*). The Debtor's Chapter 11 plan called for its liquidation.

As part of its operations, the Debtor had maintained an employee pension plan. The Debtor separated that plan into two pension plans in early 1989; one plan for retired employees and another plan for active employees. On March 6, 1989, a pre-petition reversion of the retired employee's pension plan in the amount of $2,350,000 was dis-

bursed to the Debtor. The Debtor still maintains the pension plan for active employees and, as of yet, has not received a reversion of the funds in it.

The Internal Revenue Service (I.R.S.) filed an unsecured priority claim (No. 89) under 11 U.S.C. § 507(a)(7) of the Bankruptcy Code in the amount of $352,500.00 relating to the Debtor's pre-petition reversion of the retired employee's pension plan. The debt owed to the I.R.S. arose under 26 U.S.C. § 4980 (Section 4980) which assesses a tax on the amount of any pension reversion an employer receives equal to fifteen percent of the amount of the reversion.[1] The parties stipulate that the amount of the Debtor's Section 4980 tax obligation is $352,500.00.

The plan committee (the Committee), representing the unsecured creditors, filed an objection to the I.R.S.'s unsecured priority claim of $352,500.00 on June 12, 1990. In lieu of a hearing, this Court established various briefing deadlines regarding the Committee's objection to the I.R.S.'s claim. The United States of America (the Government) filed a motion and corresponding memorandum in support of its motion for summary judgement arguing that the I.R.S.'s claim should be a priority, unsecured claim under section 507(a)(7)(E) of the Bankruptcy Code (Section 507(a)(7)(E)). Subsequently, the Government filed various supplemental briefs and reply memoranda in support of its motion for summary judgement.

In its motion for summary judgement, the Government makes numerous arguments supporting its contention that its claim qualifies for priority status under 11 U.S.C. § 507(a)(7)(E). First, the Government asserts that its claim satisfies Section 507(a)(7)(E)'s requirements because the reversion occurred on March 8, 1989 and the related excise tax Form 5330 was due on April 30, 1989.[2] Further, the Government maintains that a plain language interpretation of Section 4980 indicates a Congressional intent to classify the exaction at issue as a tax and not as a penalty. To bolster its assertion that the provision operates as a tax and not as a penalty, the Government points to the fact that Congress placed Section 4980 within Subtitle D of the Internal Revenue Code (I.R.C.), entitled "Miscellaneous Excise Taxes", and not under the I.R.C.'s tax penalty section. The history of Section 4980, the Government insists, further indicates the Legislature's intent not to punish but, rather, to recapture the tax benefits an employer previously enjoyed when it deferred the tax on those earnings it previously contributed to the qualified pension plan. Finally, the Government claims that Section 4980 is a tax because it satisfies a four-part test used in determining whether an exaction qualifies as a tax for bankruptcy law purposes.[3]

In opposing the I.R.S.'s motion for summary judgement, the Committee filed numerous memoranda arguing that the I.R.S.'s

1. Initially, Section 4980(a) imposed an excise tax of ten percent on the amount of each reversion an employer received from a qualified pension plan. Section 4980(a) was amended in 1988 to increase the tax from ten percent to fifteen percent.

 Section 4980 is one of a series of Miscellaneous Excise Taxes reported under Subtitle D of the Internal Revenue Code.

 When an employer receives a reversion, that amount qualifies as income and is subject to taxation under the income tax provisions of the Internal Revenue Code. The excise tax imposed by Section 4980 is independent of and in addition to any such income tax the I.R.S. assesses against the employer.

2. 11 U.S.C. Section 507(a)(7)(E) allows an excise tax claim on (i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or (ii)

if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition. The Government's claim satisfies the time requirements of 11 U.S.C. Section 507(a)(7)(E).

3. The Government states that Section 4980 is a tax because it is: 1) a voluntary pecuniary burden, regardless of name, laid upon individuals or property; 2) imposed by, or under authority of the legislature; 3) for public purposes, including the purposes of defraying expenses of government or undertakings authorized by it; and 4) under the police or taxing power of the governmental unit. *In re Mansfield Tire & Rubber Co.,* 80 B.R. 395 (Bankr.N.D.Ohio 1987). Regarding the third part of the test, the Government maintains that Section 4980 seeks not to punish an unlawful act but, rather, to further a public purpose.

claim is not entitled to priority status under Section 507(a)(7)(E) and Section 507(a)(7)(G) of the Bankruptcy Code because the debt underlying the claim is a non-pecuniary penalty. First, the Committee argues that the Internal Revenue Code's classification of an exaction as a tax does not determine how the exaction should be classified under the Bankruptcy Code. The Committee points to decisions of other bankruptcy courts holding that other provisions of the I.R.C. which purport to levy excise taxes actually impose penalties.

The Committee points to the four-part tax classification test the Government utilized. It argues that the third part of the test, which deals with the primary function of the provision at issue, requires a finding that Section 4980 is a tax because it seeks to discourage certain conduct and does not further a public purpose. Section 4980's legislative history, the Committee insists, indicates that it was not enacted primarily as a revenue-raising measure but as a conduct-inducing provision. Therefore, the Committee argues the raising of revenue via Section 4980 is incidental to the section's primary goal of discouraging the reversion of pension funds to an employer.

The Committee also argues that because Section 4980 does not compensate the Government for any actual, pecuniary loss, Section 507(a)(7)(G) of the Bankruptcy Code does not apply.[4] To support its claim, the Committee asserts that Section 4980 imposes the exaction whether or not the employer derived any actual tax benefits and regardless of whether the Government lost any revenue. Therefore, the Committee concludes, Section 4980 is not a pecuniary loss penalty.

The Committee finally argues that this Court, upon determining that the I.R.S.'s claim represents a non-pecuniary penalty

claim, should employ Section 510(c) of the Bankruptcy Code and subordinate that claim because the Chapter 11 plan filed in this case calls for the Debtor's liquidation. The Committee maintains that, absent a subordination of the I.R.S.'s claim, the non-pecuniary loss penalty will fall solely upon the Debtor's unsecured creditors; a result the Committee insists offends equity.

## DISCUSSION

The Eighth Circuit has not yet decided whether, for bankruptcy purposes, a federal excise tax should be considered a tax or penalty. Other circuits have spilt on the issue. As a threshold question, this Court must decide whether its decision-making role includes looking beyond the plain meaning of the word "tax" as it is used in Section 4980.

Congress's categorization of an exaction as a tax or penalty does not bind this Court. *United States v. Sotelo*, 436 U.S. 268, 270, 98 S.Ct. 1795, 1798, 56 L.Ed.2d 275 (1978). In *Sotelo*, the Supreme Court upheld the bankruptcy court's decision that the penalty language of I.R.C. Section 6672 was not dispositive of the status of the debtor's obligations with respect to dischargeability under Section 17(a) of the Bankruptcy Act.[5] In that case, a taxpayer failed to pay over to the Government withholding taxes he had collected from his employees. *Id.* The I.R.S., invoking I.R.C. section 6672,[6] assessed a penalty against the taxpayer and filed a claim for that penalty against the taxpayer's bankruptcy estate. 436 U.S. 268 at 270, 98 S.Ct. 1795 at 1798 (1978). The High Court reasoned that the monies were taxes at the time the taxpayer collected them from his employees, and the fact that I.R.C. Section 6672, the section under which the Government collected those sums, referred to them as penalties "d[id] not alter their essential character as

---

**4.** Section 507(a)(7)(G) provides that an unsecured governmental claim will have seventh priority "to the extent that ... [it is] ... for—(G) a penalty related to a claim of a kind specified in this paragraph and in compensation for actual *pecuniary* loss." 11 U.S.C. § 507(a)(7)(G) (emphasis added).

**5.** Section 17(a) of the Bankruptcy Act provided a bankrupt with a discharge from debts owed except for debt representing "taxes which the bank-

rupt had collected or withheld from others ... but had not been paid over."

**6.** Under the Internal Revenue Code of 1954, Section 6672 provided that "any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax ... shall be liable to a penalty equal to the amount of the tax evaded, or not collected, or not accounted for and paid over."

taxes for purposes of the Bankruptcy Act." *Id.* at 275, 98 S.Ct. at 1800. Having concluded that the bankrupt's liability for what section 6672 of the I.R.C. labelled a penalty was actually a tax liability, the Supreme Court held that section 17(a) of the Bankruptcy Act prohibited the discharge of that debt. *Id.* at 282, 98 S.Ct. at 1804.

Despite the clarity of the Supreme Court's *Sotelo* decision, the circuit courts disagree whether lower courts may look beyond the language of the I.R.C. to determine whether an assessment qualifies as a tax or penalty.[7] This Court agrees with the reasoning of *Sotelo* and with those circuit courts holding that bankruptcy courts can look beyond the plain language of the federal tax laws when applying bankruptcy law.

 Having decided that we should look beyond the label the I.R.C. attaches to an assessment, this Court must determine whether the alleged tax on which the Government bases its claim for priority status is in fact a tax or a penalty, a question the Eighth Circuit has not addressed.

The Fourth Circuit has held that an assessment made under I.R.C. Section 4980 is a tax, not a penalty, for purposes of determining its priority in bankruptcy. *In re C–T of Virginia Inc.*, 977 F.2d 137, 140 (4th Cir. 1992). For that reason, the Fourth Circuit upheld a district court's determination that, under Section 507(a)(7)(E) of the Code, claims for I.R.C. Section 4980 federal excise taxes are entitled to priority treatment as excise taxes in bankruptcy. *Id.* The version of I.R.C. Section 4980 in effect when the Fourth Circuit decided *In re C–T of Virginia* imposed a tax rate [8] of ten percent to reversions of pension benefits that employers received. *Id.* at 138.

The Circuit Court agreed with the district court's analysis of the tax versus penalty

issue. *Id.* at 140. (Citing *In re C–T of Virginia, Inc.*, 135 B.R. 501, 503 (W.D.Va. 1991)). Central to the court's decision was the Fourth Circuit case of *New Neighborhoods v. W.Va. Workers' Comp. Fund*, 886 F.2d 714 (4th Cir.1989). The *New Neighborhoods* case involved a debtor who challenged the priority status, under Bankruptcy Code Section 507(a)(7)(E), of a debt representing premium payments it owed to West Virginia's Workers' Compensation Fund. 886 F.2d 714. The *New Neighborhoods* court, drawing upon Supreme Court precedent, defined a tax as a payment that "the state has compelled ... [that] serves a public purpose." *Id.* at 718. The Fourth Circuit recognized that premiums paid to the Worker's Compensation Fund served the public purpose of "allocat[ing] the burden of the costs of the injured employees and/or of their dependents among employers rather than among the general public." *Id.* at 719. Without premium contributions from all the employers in West Virginia, the fund could not survive and injured employees might require public support. *Id.* The West Virginia State Compensation Commissioner possessed discretion to establish premium rates based upon an employer's nature of business, degree of hazard and the individual employer's record. *Id.* at 717.

After examining the *New Neighborhoods* standard, the district court concluded that an assessment made pursuant to Section 4980 resembles an excise tax and held that the Section 4980 tax claim qualified for priority under Section 507(a)(7)(E) of the Code. *In re C–T of Virginia, Inc.*, 977 F.2d 137, 140 (4th Cir.1992). The *C–T of Virginia* court also held that a Section 4980 tax claim "does not fall within the purview of Section 507(a)(7)(G) as it is not exacted in compensation for actual pecuniary loss." *Id.* at 140.

---

7. The Sixth Circuit has decided that no independent decision about the classification of an excise tax as a tax should be made by the courts when Congress has deemed a particular federal exaction an excise tax. *In re Mansfield Tire & Rubber Co.*, 942 F.2d 1055 (6th Cir.1991). However the Fourth Circuit in *In re C–T of Virginia, Inc.*, 977 F.2d 137 (4th Cir.1992); the Fifth Circuit in *Matter of Unified Control Systems, Inc.*, 586 F.2d 1036 (5th Cir.1978); and the Tenth Circuit in *In*

*re Cassidy*, 983 F.2d 161 (10th Cir.1992) have all held that the courts can look beyond the plain meaning of an Internal Revenue Code Section to a statute's context.

8. In 1988, I.R.C. Section 4980 was amended increasing the tax rate from ten to fifteen percent. See Pub.L. No. 100–647, 102 Stat. 3704.

Other circuit courts, in deciding the tax versus penalty classification issue within a bankruptcy context, express views contrary to that of the Fourth Circuit. The Tenth Circuit, for example, held in *In re Cassidy* that an unsecured tax claim under I.R.C. Section 72(t) [9] was not entitled to priority as a tax under Bankruptcy Code Section 507(a)(7)(E) but was, rather, a non-pecuniary penalty. *In re Cassidy*, 983 F.2d 161 (10th Cir.1992). That Court reasoned that if the purpose of the tax was to deter certain taxpayer's conduct, then the deterrent effect would be lost when the bankrupt's innocent creditors, not the bankrupt, had to pay the tax. *Id.* at 164. The Tenth Circuit maintained that "the policy of protecting unsecured creditors from the bad conduct of the debtor is best implemented by avoiding burdening the claims of unsecured creditors with penalties that are imposed on the debtor." *Id.*

The Fifth Circuit Court of Appeals has ruled that a federal excise tax under I.R.C. Section 4941 [10] was not a tax but rather a penalty under Section 57(j) of the Bankruptcy Act. *Matter of Unified Control Systems, Inc.*, 586 F.2d 1036 (5th Cir.1978). The *Unified Control Systems* court stated that "[t]he language of the Act, its legislative history, the graduated levels of sanctions imposed, and the almost confiscatory level of exactions assessed, convince us that the exactions in question were intended to curb the described conduct through pecuniary punishment." *Id.* at 1039. The court added that "it would thwart the congressional purpose to honor such assessments over the claims of entirely innocent creditors, except insofar as the government can show pecuniary loss." *Id.* at 1039.

Though the Eighth Circuit has not ruled on this issue, a district court in Arkansas has found that an assessment made pursuant to I.R.C. Section 4941 is really a penalty not a tax, despite the I.R.C.'s language labelling it a tax. *Farrell v. United States*, 484 F.Supp. 1097 (E.D.Ark.1980).

The *Farrell* case involved taxpayers whom the I.R.S. had sued for "self dealing" in connection with the management of a non-profit corporation. *Id.* at 1098. The I.R.S. and the taxpayers settled their dispute; the taxpayers agreed to pay $140,002.74 to the Government. *Id.* The taxpayers contested having to pay interest on the settlement. *Id.* The parties "agreed that if § 4941(a) [the section of the I.R.C. under which the I.R.S. had assessed the self-dealing liability] is construed as a 'penalty' as opposed to a 'tax', the plaintiffs are entitled to recovery of the interest." 484 F.Supp. at 1098. The district court, relying upon the analysis of the *Unified Control Systems* court, found that the self dealing tax that section 4941 imposed constituted "a penalty, not a tax, for purposes of computing interest on the settlement made in tax court." *Id.* at 1098. Hence, the *Farrell* court held that the Government could not recover interest on the settlement because the taxpayers had paid the penalty within ten days of the date on which the I.R.S. had issued a notice of payment and demand for payment of that amount. *Id.*

The *Farrell* court rejected arguments that *Unified Control Systems*, a case deciding whether assessments constituted a taxes or penalties for purposes of determining its dischargeability in bankruptcy, did not apply in the tax context. 484 F.Supp. at 1099. The district court stated that it "[did] not see any valid reasons to distinguish the reasoning of . . . *Unified Control Systems* [from *Farrell* ]." *Id.*

The Technical and Miscellaneous Revenue Act of 1988 increased the tax Section 4980 imposes upon an employer who receives a reversion of pension funds from ten percent of those funds received to fifteen percent of the reversion. H.R.Rep. No. 101–881, 101st Cong., 2d Sess. Vol. 5 (1990), U.S.Code Cong. & Admin.News 1990, 2017, 2056. Before it enacted the Technical and Miscellaneous Revenue Act of 1988, the Senate adopted an amendment seeking a temporary increase in the Section 4980 reversion tax rate from ten percent of the reversion to sixty percent of

---

9. 26 U.S.C. § 72(t) assesses a 10% exaction on the premature withdrawal of pension plan funds.

10. I.R.C. Section 4941 tax is a federal excise tax on undistributed income, speculative investments, etc. of private foundations.

the reversion. *Id.* at 2056. However, the proposed sixty-percent tax rate was dropped in conference and replaced by the fifteen-percent tax rate. *Id.* at 2056. The House Report to the 1988 enactment explained that "[t]he excise tax on reversions was originally enacted because the Congress believed that it was appropriate to limit the tax incentives available to an employer that maintains the pension plan in order to reduce the financial incentive an employer has to terminate a plan." *Id.* at 2066.

The Eighth Circuit has held that the bankruptcy court can use Section 510(c) of the Bankruptcy Code to subordinate a governmental non-pecuniary loss tax penalty to general unsecured creditors where the debtor is liquidating itself under Chapter 11 of the Bankruptcy Code. *Schultz Broadway Inn v. United States of America,* 912 F.2d 230, 231 (8th Cir.1990). The *Schultz Broadway Inn* case involved the subordination of the Government's claim based upon a negligence penalty the Internal Revenue Service had assessed, prepetition, against the debtor. 912 F.2d at 231. The Court in deciding to allow the subordination noted that section 726 of the Bankruptcy Code requires the subordination of governmental penalty claims in bankruptcies brought under Chapter 7 of the Code because in such cases the debtor usually ceases operations with assets insufficient to fully satisfy its creditors' claims and "a rule subordinating penalty claims recognizes that ordinary creditors should receive protection from debtors' punitive obligations." *Id.* at 233. The Court reasoned that Congress did not include a rule requiring the subordination of penalty claims among the provisions of the Code governing Chapter 11 because many Chapter 11 debtors continue to operate through bankruptcy and "quite rightly should bear the burden of [their] full punitive obligations." *Id.* The *Schultz Broadway Inn* court further reasoned that a Chapter 11 liquidation bankruptcy more closely resembles, for purposes of subordinating non-pecuniary loss penalties, a Chapter 7 case than a Chapter 11 reorganization and so a court could properly, after considering the equities, subordinate a government's claim based upon a non-pecuniary loss penalty to the claims of non-insider,

general, unsecured creditors. *Id.* at 234. The Eighth Circuit emphasized that "given Congress' preference for compensating creditors' actual losses first ... in the context of a liquidating chapter 11, the Government [opposing the subordination of its claim based upon non-pecuniary losses] bears the burden of directly bringing ... equitable considerations to the bankruptcy court's attention." *Id.*

The I.R.S. asserts, in its numerous briefs, that Section 4980 is a tax for purposes of priority under Bankruptcy Code Section 507(a)(7)(E). In applying the *New Neighborhoods* standard to the facts of this case, this Court cannot find a strong connection between a public purpose and the Section 4980 excise tax. In *New Neighborhoods,* the worker's compensation premium payments were paid into the state in order to avoid having the public pay for injuries sustained by employees. Certain criteria were used to objectively calculate each employer's workers' compensation premium. In this case, for a Section 4980 excise tax to apply, the employer must have an overfunded pension plan because employee pension liabilities must first be satisfied before an employer can realize a reversion of plan assets. Additionally, the Section 4980 tax applies no standards or criteria as to how the tax is calculated. The Section 4980 fifteen-percent tax rate could conceivably be applied against a debtor who may not have realized any deferred tax benefits relating to past pension contributions. Moreover, the debtor must still pay taxes on any reverted funds as part of its gross income notwithstanding the Section 4980 tax.

The *New Neighborhoods* court dealt with a pecuniary tax calculation based on various objective factors lacking in this case. In this case, the Government has produced no evidence demonstrating how much tax revenue it lost by granting deferrals or deductions to the debtor. The unsecured creditors of the debtor should not bear the burden of an exaction based on a flat tax rate not related to any actual, pecuniary revenue loss to the Government. Like the *C–T of Virginia* court, this Court cannot find a basis for

applying Section 507(a)(7)(E) or (G) of the Bankruptcy Code to the facts before it.

Moreover, the legislative history of Section 4980 suggests that the fifteen-percent tax rate furthers a Congressional policy of providing financial disincentives for employer reversions. Any taxes raised are incidental to this deterrence policy.

■ Finally, the facts in this case are substantially identical to the *Schultz Broadway Inn* case. In this case, a liquidating Chapter 11 debtor is contesting a governmental tax claim's priority status within bankruptcy as in the *Schultz Broadway Inn* case. Therefore, this Court upon deciding that the Government's tax claim represents a non-pecuniary loss penalty and not a tax, has the power to subordinate the Government's tax claim to other unsecured creditor's of the debtor.

Accordingly, this Court is convinced that the I.R.S.'s claim for Section 4980 federal excise taxes should not be given priority status under Bankruptcy Code Sections 507(a)(7)(E) and 507(a)(7)(G). The Court further holds that the I.R.S.'s tax claim be subordinated to all other unsecured creditor claims under 510(c).

An order consistent with this Memorandum Opinion will be entered this date.

### ORDER

For the reasons set forth in the Memorandum Opinion entered this date, IT IS

ORDERED THAT

(1) the Plan Committee's objection to claim number 89 is SUSTAINED as that claim is not entitled to priority status under either 11 U.S.C. § 507(a)(7)(E) or (G); and

(2) pursuant to 11 U.S.C. § 510(c), claim number 89 shall be subordinated to the claims of the Debtor's other unsecured creditors.