**In re JUVENILE SHOE CORPORATION OF AMERICA, Debtor.**

**UNITED STATES of America, Appellant,**

v.

**PLAN COMMITTEE OF JUVENILE SHOE CORPORATION OF AMERICA, Appellee.**

No. 4:94 CV 730 DDN.

United States District Court,
E.D. Missouri,
Eastern Division.

March 30, 1995.

Francis X. Buckley, Jr. and Jan Tore Hall, Thompson and Mitchell, St. Louis, MO, and Joseph Braunstein, Riemer and Braunstein, Boston, MA, for Juvenile Shoe Corp. of America.

Wesley D. Wedemeyer, Office of U.S. Atty., St. Louis, MO, and S. Hollis Fleischer, U.S. Dept. of Justice, Office of Sp. Litigation, Tax Div., Washington, DC, for the U.S.

Scott A. Greenberg, Davis and Davis, St. Louis, MO, for Unsecured Creditors Committee, trustee.

James S. Cole, Jr., Asst. U.S. Trustee, U.S. Dept. of Justice, Office of Trustee, St. Louis, MO.

### *MEMORANDUM*

NOCE, United States Magistrate Judge.

This action is an appeal from the order of the United States Bankruptcy Court for the Eastern District of Missouri, under 28 U.S.C. § 158(a) and Federal Bankruptcy Rule 8001(a). The action is before the undersigned United States Magistrate Judge by consent of the appellant and the appellee for the exercise of authority under 28 U.S.C. § 636(c)(3).

Debtor Juvenile Shoe Corporation of America (Juvenile Shoe) filed a petition for relief under Chapter 11 of the Bankruptcy

Code, on March 28, 1989. Thereafter, the Internal Revenue Service (IRS) filed an estimated proof of claim for excise taxes under Internal Revenue Code (IRC) § 4980[1] in the amount of $360,000. The Plan Committee of Juvenile Shoe, representing the unsecured creditors, objected to this claim, alleging that it was estimated and that it is not entitled to the claimed priority under Bankruptcy Code (BC) § 507(a)(7)(E).[2]

In connection with the motion of the United States for summary judgment, the Bankruptcy Court found from the record, and the parties do not here dispute, the following facts:

> As part of its operations, the Debtor [ (Juvenile Shoe) ] had maintained an employee pension plan. The Debtor separated that plan into two pension plans in early 1989; one plan for retired employees and another plan for active employees. On March 6, 1989, a pre-petition reversion of the retired employees' pension plan in the amount of $2,350,000 was disbursed to the Debtor. The Debtor still maintains the pension plan for active employees and, as of yet, has not received a reversion of the funds in it.

*In re Juvenile Shoe Corporation of America,* 166 B.R. 404, 405–06 (Bankr.E.D.Mo.1994). The parties stipulated that Juvenile Shoe terminated a qualified pension plan and received an employer reversion as defined in I.R.C. § 4980, in the amount of $2,350,000;

and that this reversion resulted in an obligation to the IRS in the amount of $352,500.

The issue before the Bankruptcy Court was whether the IRS claim against debtor Juvenile Shoe for the IRC § 4980 obligation was entitled to priority status under BC § 507(a)(7)(E). The Bankruptcy Court determined that the IRC § 4980 obligation was not entitled to priority under BC § 507(a)(7)(E). *Id.* at 411. In reaching this conclusion, the Court determined that, although it was denominated an "excise tax" by Congress, the IRC § 4980 obligation was a penalty and not a tax entitled to priority; and that the obligation could not be characterized as a pecuniary loss penalty under BC § 507(a)(7)(G). *Id.*

The only issues before this Court are ones of law, whether under BC § 507(a)(E)(7) the IRS claim to the § 4980 obligation is a pre-petition excise tax and not a penalty or, in the alternative, whether it was a penalty related to a priority tax claim which was in compensation for an actual pecuniary loss. These are issues of law of first impression in the Eighth Circuit, which this Court must decide *de novo. United States v. Olson,* 4 F.3d 562, 564 (8th Cir.1993); *In re Apex Oil Co.,* 884 F.2d 343, 348 (8th Cir.1989).

For the reasons set forth below, the Court concludes that the IRC § 4980 obligation claimed is an excise tax which has priority under BC § 507(a)(7)(E).

---

1. IRC § 4980, 26 U.S.C. § 4980 (Tax on Reversion of Qualified Plan Assets to Employer) provides:

   (a) Imposition of Tax.—There is hereby imposed a tax of 15 percent of the amount of any employer reversion from a qualified plan.

   (b) Liability for Tax.—The tax imposed by subsection (a) shall be paid by the employer maintaining the plan.

   (c) Definitions and special rules.—For purposes of this section—

   (4) Time for payment of tax.—For purposes of subtitle F, the time for payment of the tax imposed by subsection (a) shall be the last day of the month following the month in which the employer reversion occurs.

   Among other changes, in 1990 Public Law 101–508, § 12001 increased the tax to 20 percent.

2. Bankruptcy Code § 507(a)(7) (Priorities), 11 U.S.C. § 507(a)(7), provides:

(a) The following expenses and claims have priority in the following order:

(7) Seventh, allowed unsecured claims of governmental units; only to the extent that such claims are for—

(E) an excise tax on—

(i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or

(ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition;

\* \* \* \* \* \*

(G) a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss.

IRC § 4980 was added to the Internal Revenue Code by the Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat. 2085 (the Act), specifically § 1132 of the Act, 100 Stat. at 2478. Section 1132 is captioned, "Excise tax on reversion of qualified plan assets to employer." Further, IRC § 4980 is contained in Subtitle D of the Internal Revenue Code, which is captioned, "Miscellaneous Excise Taxes." The IRC § 4980 obligation is required to be reported on a return, IRS Form 5330, and to be paid not later than the last day of the month following the month in which the reversion occurs. 26 U.C.S. § 4980(c)(4).

■ In deciding whether the IRC § 4980 obligation is a tax or a penalty, the cardinal factor is Congress' intent in enacting § 4980. *United States v. Sotelo,* 436 U.S. 268, 275–79, 98 S.Ct. 1795, 1800–02, 56 L.Ed.2d 275 (1978). Clearly, the words contained in a statute are the clearest evidence of congressional intent.

> Since it should be generally assumed that Congress expresses its purposes through the ordinary meaning of the words it uses, we have often stated that '[a]bsent a clearly expressed legislative intention to the contrary, [statutory] language must ordinarily be regarded as conclusive.'

*Escondido Mutual Water Co. v. La Jolla Band of Mission Indians,* 466 U.S. 765, 772, 104 S.Ct. 2105, 2110, 80 L.Ed.2d 753 (1984) (*quoting North Dakota v. United States,* 460 U.S. 300, 312, 103 S.Ct. 1095, 1102–03, 75 L.Ed.2d 77 (1983), *quoting Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)).

■ In determining whether the exaction at issue is a tax or a penalty, the United States would have the Court look no further than the statutory "excise tax" captions to discern Congress' intent. *See In re Mansfield Tire & Rubber, Co.,* 942 F.2d 1055, 1059 (6th Cir.1991), *cert. denied,* 502 U.S. 1092, 112 S.Ct. 1165, 117 L.Ed.2d 412 (1992). However, this Court agrees with the Bankruptcy Court that courts may look behind the "excise tax" denomination given the § 4980 obligation by Congress and look at the operative language of the statute to determine whether it is a tax or a penalty. *In re Juvenile Shoe Corporation of America,* 166 B.R. 404, 407 (Bankr.E.D.Mo.1994); *see also United States v. Sotelo,* 436 U.S. 268, 275, 98 S.Ct. 1795, 1800, 56 L.Ed.2d 275 (1978); *In re Cassidy,* 983 F.2d 161, 163 (10th Cir.1992); *In the Matter of Kline,* 403 F.Supp. 974, 978 (D.Md.1975), *aff'd,* 547 F.2d 823 (4th Cir. 1977).

■ The characteristics of the IRC § 4980 liability indicate that Congress intended that it be treated as a tax. Unlike penalties and additions to tax, the IRC § 4980 obligation is imposed by self-assessment on IRS Form 5330, and interest on the unpaid liability begins to run on the last day prescribed for payment. *Compare* 26 U.S.C. § 6601(a) (regarding interest due on unpaid tax) *with* § 6601(e)(2) (regarding interest due on unpaid penalties, additional amounts, and additions to taxes); *cf. Latterman v. United States,* 872 F.2d 564, 568 (3rd Cir.1989) (interest on § 4975 excise tax begins to run on last day prescribed for payment). Moreover, to assert an IRC § 4980 liability, the IRS must send, as in the case of income and other taxes, a notice of deficiency, entitling the taxpayer to petition the Tax Court for a redetermination before the IRS may assess the tax. *See* 26 U.S.C. §§ 6212(a), 6213(a).

Further, the IRC § 4980 obligation compensates the government for the lost use of income taxes. IRC § 401 permits employers to defer employee compensation through the establishment of a tax-exempt trust, such as a pension plan, for the employees' benefit, provided certain conditions are met. After the trust is established, the employer's contributions to it, as well as the earnings thereon, are exempt from current income taxation and those contributions become assets of the trust.

Such contributions are made on the basis of actuarial computations. If, for whatever lawful reason, the trust assets contributed to by the employer exceed the plan's liabilities, the excess assets may revert to the employer. 26 U.S.C. § 401(a)(2). When this occurs, employers receive income the tax on which previously had been deferred. 26 U.S.C. § 404. That income is attributed to

the year in which the reversion occurs and is subject to taxation for that year. 26 U.S.C. § 4980(c)(4). However, as the United States argues, taxation for the year of the reversion does not compensate the government for the loss of use by the government of this tax money during the period following the contributions to the fund. The Court agrees with the United States that this is the situation IRC § 4980 was designed to address.

This Court has also looked to the legislative history of IRC § 4980. The legislative history reflects Congress' intent that § 4980 recapture the benefits of deferred income taxes through the imposition of a flat rate excise tax.

> The excise tax on reversions was originally enacted because the Congress believed that it was appropriate to limit the tax incentives available to an employer that maintains a pension plan. Congress recognized that contributions to such plans, as well as the earnings on such contributions, are intended to provide for the pension benefits of plan participants. To the extent that amounts in such plans are not used for pension purposes, Congress believed that the tax treatment of reversions should recognize that the tax on earnings on pension funds is deferred and, thus, the benefits of this treatment should be recaptured. In many cases, a 15–percent excise tax is not sufficient to recapture the tax benefits received. Therefore, it is appropriate to increase the excise tax to better approximate the tax benefits of the income deferral.

*House Budget Committee Report on Omnibus Budget Reconciliation Act of 1990*, Pub.L. 101–508, 104 Stat. 1388, H.R.Rep. No. 881, 101st Cong., 2d Sess. 332, *reprinted in* 1990 U.S.C.C.A.N. 2334. The reversion of the excess benefit plan monies to the employer subjects the employer to a deferred income tax on the excess funds, according to a prescribed rate, the IRC § 4980 excise tax.

The Plan Committee argues that IRC § 4980 implements a Congressional intention of deterring certain activities and, thus, is a

penalty. The Bankruptcy Court agreed that the imposition of the flat 15% was to deter reversions to employers of prior contributions and, therefore, it concluded that it is not a tax, but a penalty. *In re Juvenile Shoe Corporation of America,* 166 B.R. 404, 411 (Bankr.E.D.Mo.1994). This Court disagrees. Not every IRC provision which deters particular actions is a penalty. *Cf. Sonzinsky v. United States,* 300 U.S. 506, 513–14, 57 S.Ct. 554, 555–56, 81 L.Ed. 772 (1937) (license tax on firearms dealers was a valid exercise of constitutional taxing power: "Every tax is in some measure regulatory. To some extent it interposes an economic impediment to the activity taxed as compared with others not taxed. But a tax is not any less a tax because it has a regulatory effect." *Id.* at 513, 57 S.Ct. at 555–56.).

Appellee argues that, if the employer, when faced with the prospect of a reversion of monies as in this case, instead transfers the potential reversion to an employee stock ownership plan, the employer would not have to pay the 15% under IRC § 4980. *See* 26 U.S.C. § 4980(c)(3).[3] This may be true; it is also true that, in such a situation, concomitant with not paying the 15%, the employer would not regain the use of the 85% balance of the potential reversion. Further, the legislative history of IRC § 4980 includes a discussion of the fact that the § 4980 excise tax is inapplicable generally to tax-exempt employers, to situations where the reversion was the result of a mistaken contribution, and to situations involving returns under § 403(c)(2) of the Employee Retirement Income Security Act of 1974. *Conference Agreement on Asset Reversions Under Qualified Plans on Tax Reform Act of 1986,* Pub.L. 99–514, *reprinted in* 1986 U.S.C.C.A.N. 4571. Therefore, the asserted Congressional intent to induce employers not to take the reversion was not applicable to all situations.

■ The Court is not persuaded that this statutory scheme reflects a Congressional intent to penalize employers who fail to contribute monies to employee stock ownership

---

**3.** There are statutory limitations on the tax avoidance by the transfer to an employee stock owner-

ship plan. *See* 26 U.S.C. § 4980(c)(3)(A)(i).

plans, without being required to do so by law or collective bargaining agreements, as preferable as such may be.

The IRC § 4980 obligation at issue in this case is an excise tax which is entitled to priority under BC § 507(a)(7)(E). *In re C–T of Virginia, Inc.*, 977 F.2d 137, 139–40 (4th Cir.1992). The action is reversed and remanded to the Bankruptcy Court for further proceedings in accordance with this Memorandum.